**UNITED ENERGY CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C-85-2884 RFP.

United States District Court, N.D. California.

July 3, 1985.

**44**

Montie S. Day, Jon R. Vaught, of Day & McBride, Oakland, Cal., for plaintiff.

Jay R. Weill, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER

PECKHAM, Chief Judge.

## INTRODUCTION

Plaintiff United Energy Corporation (UEC) brings this action against the United States pursuant to 26 U.S.C. § 7431(a) and requests damages of $25,000,000. The plaintiff claims that damages should be awarded because counsel for the United States, Jay Weill, allegedly disclosed tax information about UEC to a newspaper reporter after a hearing on plaintiff's application for a temporary restraining order. The United States now moves for summary judgment on the grounds that Mr. Weill merely repeated to a reporter what had been said in a public hearing. The court grants summary judgment in favor of the United States.

In his declaration attached to his moving papers, Jay Weill stated that the proceedings relating to the TRO were conducted in public and that newspaper reporters were present in the courtroom. In fact, the hearing on January 14, 1985, was in Judge Vukasin's chambers, and no reporters were present. UEC thus argues that the affidavit was made in bad faith and, pursuant to rule 56(g), sanctions should be imposed and an order to show cause should issue as to why Jay Weill should not be held in contempt. The court does not believe that faulty recollection constitutes "bad faith" and therefore refuses to impose sanctions and refuses to issue the order to show cause.

## STATEMENT OF FACTS

On January 14, 1985, UEC filed an action against the United States and various individual defendants. In the complaint and the voluminous pleadings filed the same day, UEC stated that it was under investigation by the IRS and asked the court to stop the investigation. Complaint at ¶ 8A–H; Declarations of Montie Day and Philip Storrer. UEC also filed an application for a temporary restraining order and an order to show cause that was heard that afternoon by Judge Vukasin. The hearings were held in the private chambers of Judge Vukasin; no court reporter was present. The following day a hearing was held in Judge Vukasin's courtroom.

On January 15, 1985, an article appeared in the *Oakland Tribune,* which quoted Jay Weill as saying the following:

> There is no question that the IRS is conducting an ongoing investigation of this company.
>
> We haven't destroyed anything and we have no intention of destroying anything. There has been no impropriety.
>
> I don't know whether that's true or not (as to whether UEC has been placed on an abusive tax shelter list).
>
> But, if we have disallowed such deductions, we have a right and obligation to tell the taxpayer why we did so. I think that's what they're referring to.

Complaint at Exhibit B.

Gene Ayres, the reporter who wrote the article, vaguely recalls that he talked to Weill by telephone on January 14 to get the government's response to the allegations made by UEC in its complaint and related papers filed that day. (Declaration of George Bevan, Jr., filed June 14, 1985).

In Weill's first declaration filed in connection with the instant motion, he stated that the proceedings relating to the TRO were in public and that newspaper reporters were present in the courtroom either January 14 or 15, or both dates. He declared that he recalled leaving the courtroom on either January 14 or 15 and being asked questions about the lawsuit filed by UEC. According to Weill, he repeated to the reporters what he had just said in their presence in the courtroom.

Weill filed a supplemental declaration stating that his recollection was in error. All proceedings on January 14 were in chambers. He mistakenly had thought that after the hearing in chambers on January 14, all counsel and Judge Vukasin had returned to the courtroom and summarized what had been said in chambers. IRS District Counsel Perry Foster, who had been with Weill in Judge Vukasin's chambers on the 14th, was in Europe at the time Weill filed the declaration so Weill did not have the benefit of consulting with Foster about the sequence of events.

## DISCUSSION

### 1. Motion for summary judgment

Section 7431 authorizes civil actions against the United States "if any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103...." 26 U.S.C. § 7431(a)(1). The section further provides that "[n]o liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b).

Section 6103 generally states that returns and return information shall be confidential and shall not be disclosed except as authorized by statute. The statute authorizes the disclosure of return information "in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only ... if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." 26 U.S.C. § 6103(h)(4)(C).

■ There is no doubt that Weill was permitted by statute to make the disclosures that he made in chambers or in court. The acknowledgement that UEC was under investigation related directly to UEC's allegations in its complaint. *See Davidson v. Brady,* 559 F.Supp. 456 (W.D.Mich.1983), *aff'd,* 732 F.2d 552 (6th Cir.1984) (disclosures permissible pursuant to section 6103(h) where plaintiff's financial statement was attached to a Sentencing Memorandum to show falsity of third party's financial statement). The issue before this court is, however, whether Weill later could repeat to reporters the statements made in a judicial proceeding.

In *Rodgers v. Hyatt,* 697 F.2d 899 (10th Cir.1983), the court held that the fact that return information had been disclosed by a taxpayer's attorney in a court proceeding

to enforce an internal revenue summons did not justify a later disclosure. The IRS had issued a summons to a bank in connection with the income tax liabilities of Rodgers. During the hearing to enforce the summons, Hyatt, an IRS official, was subpoenaed as a witness by Rodgers. In testimony elicited by Rodgers' counsel, Hyatt stated that Rodgers was dealing in stolen oil and was not reporting all income received from the sale of that oil. Two months later, Hyatt mentioned that Rodger's company was rumored to be involved in stealing oil. Rodgers brought suit, alleging a violation of section 6103.

Hyatt contended on appeal that the "tax information" he disclosed had been fully developed and disclosed in the course of the Wyoming district court proceeding during his cross-examination. The content of the statement had become a matter of public record and, accordingly, could no longer be considered confidential "return information" within the meaning of section 6103. The Tenth Circuit, however, held that even assuming the loss of confidentiality, Hyatt violated "the requirement that he, as an officer of the United States, was prohibited from disclosing 'return information' absent express statutory authorization." *Id.* at 906; *see also Olsen v. Egger*, 594 F.Supp. 644, 647 (S.D.N.Y.1984) (prohibition against disclosure of the returns, except as provided by the statute, may not be circumvented even when the returns relate to a matter in issue during a litigation).

The Tenth Circuit's holding appears at odds with its own reasoning. The court in its opinion stated:

> it is wholly untenable to hold that a disclosure of such public information can in any way give rise to an action for damages. This is particularly true where, as here, the suit is brought by the very person who, in the course of the prior summons enforcement proceedings, caused the matter in question to become public knowledge.

*Rodgers*, 697 F.2d at 903. The Tenth Circuit's reasoning, as opposed to its holding, is well-supported. In *United States v. Pos-*

*ner*, 594 F.Supp. 930, 936 (S.D.Fla.1984), the court found that once certain information is in the public domain, even if the information is part of a federal income tax return, the entitlement to privacy is lost. The *Posner* court held that the press had a First Amendment right of access to the defendant's tax returns that were admitted into evidence at his codefendant's trial on charges of violating the federal tax laws. *Id.* at 932.

Certainly, it is well established that what transpires in open court is a matter of public record. *Nixon v. Warner Communications*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). It is not so well established that what transpires in a judge's chambers is also a matter of public record. Weill claims that he merely repeated what had been said in chambers or in open court. More importantly, Weill merely responded to questions that were asked because of UEC's filing of its complaint. Thus, in response to UEC's charges in its complaint, Weill denied that the IRS had destroyed records, stated that he did not know whether UEC was on a list of abusive tax shelters, stated that if deductions were disallowed by the IRS, they were properly disallowed, and admitted that UEC was under investigation by the IRS.

Once UEC decided to make certain of its return information public by filing a complaint, it lost any entitlement to privacy in that information. This court will not allow UEC to recover damages for disclosures that it had already made itself. Since Weill only responded to allegations in the complaint and did not disclose any additional return information, his disclosures are permissible because the return information was no longer confidential. The court therefore grants summary judgment in favor of defendant.

### 2. Motion for sanctions

■ Rule 56 provides that if any affidavits are "presented in bad faith or solely for the purpose of delay", then the court shall order the party employing them "to

pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt. Fed.R.Civ.P. 56(g).

Jay Weill's declaration unquestionably contained factual errors. His failure to recall accurately the events as they occured, however, do not constitute "bad faith". His explanation was reasonable (the fact that he did not have a chance to check his memory against that of IRS district counsel Perry Foster) and is accepted by the court. No matter what version of the facts is employed, the United States is entitled to summary judgment.

### CONCLUSION

The court GRANTS summary judgment in favor of the United States. Plaintiff's motion for sanctions and an order to show cause is DENIED. Judgment will be entered accordingly.

IT IS SO ORDERED.