### Eric E. & Peggy K. CHANDLER, Plaintiffs,

v.

### UNITED STATES of America, Defendant.

#### No. 86–C–1105S.

United States District Court, D. Utah, C.D.

June 6, 1988.

Eric E. Chandler and Peggy K. Chandler, Centerville, Utah, pro se.

Brent D. Ward, U.S. Atty., Glen R. Dawson, Asst. U.S. Atty., Salt Lake City, Utah, Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

### RULING

SAM, District Judge.

This action is before the court for final judgment following trial without jury. Plaintiffs Eric and Peggy Chandler, appearing *pro se*, sue for damages claiming the Internal Revenue Service (IRS) negligently made an unlawful disclosure of the

Chandlers' return information as prohibited by 26 U.S.C. § 6103.

## I. *Facts*

In February, 1985, the IRS assessed against the Chandlers a $500 "frivolous return" penalty, 26 U.S.C. § 6702, because they crossed out the jurat on their 1983 tax return. On April 22, 1985, the IRS mailed the Chandlers a final demand for $512.60 (the penalty plus interest accrued to that date) which informed them their failure to pay that amount within ten days would result in enforced collection, including levy and distraint. The Chandlers immediately filed suit, Civil No. 85–C–1020G, to enjoin the IRS from collecting the penalty plus interest. Their complaint was dismissed for lack of subject matter jurisdiction on June 26, 1985. The following day, the Chandlers sent by certified mail to the IRS office in Salt Lake City a check for $512.60 on which they recorded a document locator number; however, they neglected to follow the demand letter's instruction to record their taxpayer identification number (TIN) on the check. The Chandlers claim they sent with the check an explanatory cover letter and the demand letter. (The court assumes the final demand letter contained the Chandlers' TIN.) On July 1, 1985, the Chandlers' letter reached the IRS office in Salt Lake, was sorted with other certified mail and carried to the Centralized Services unit where it was opened and classified. Because the TIN was missing, the Chandlers' letter or letters, check and envelope were stapled together, and sent to teller Pete Trebesch who determined he could not credit the proper account until he discovered the TIN. He readily accessed the Chandlers' account on the IRS computer by using a program known as "SSNAD," but instead of recording the first three digits of their primary TIN (558), he copied the three-digit street address of the Chandlers' residence (574) which appeared on the computer screen immediately to the right of their TIN. Trebesch then sent the Chandlers' check, identified by the incorrect TIN, to the Ogden Service Center for cred-

iting to their account. The Service Center could not find an account with that TIN, so the Chandlers' check was placed in an "unidentified remittance account" pending proper identification.

After the final notice was sent, Revenue Officer Linda Jernigan was assigned to collect on the Chandlers' account which was still delinquent on IRS records. On August 6, 1985, Officer Jernigan mailed a notice of levy to Western Airlines to collect the $512.60 plus accrued interest ($532.70). The Western Airlines payroll clerk, Pauline Davis, received the notice of levy on August 13, 1985; and as instructed, withheld $167.06 from the paycheck of Peggy Chandler.

On September 3, 1985, Revenue Officer Jernigan learned of a second injunctive action filed by the Chandlers, and thus became aware they had paid the $512.60. She immediately directed the payment be credited to the Chandlers' account as of July 10, 1985. Officer Jernigan then requested that Pauline Davis remit only $14.64 on the levy, the amount of outstanding interest to the date of payment; and on September 5, 1985, Western Airlines sent a check to the IRS in the amount of $14.64. Western Airlines also reimbursed Peggy Chandler for the amount withheld from her check less $14.64.

The Chandlers assert the IRS negligently issued the notice of levy, which was an unlawful disclosure of return information as defined in 26 U.S.C. § 6103. They claim Peggy Chandler suffered "extreme embarrassment, humiliation, loss of self esteem, distress [and] mental anguish," because, as a result of the levy, Western Airlines issued Peggy a letter of reprimand the Chandlers believe remains in her personnel file. Complaint at 3. The letter allegedly threatened disciplinary action ranging from reprimand to suspension or discharge. The Chandlers say this action blemished an otherwise perfect employment record.

The government responds the disclosure[1] was a result of simple error that could have been avoided had the Chandlers properly identified their check with their

---

1. The government concedes the levy disclosed    return information.

TIN. Moreover, the disclosure was not unlawful, because the Chandlers waived the confidentiality of their return by commencing the original injunctive suit, thereby making the return information a matter of public record.

The court considers the waiver of confidentiality argument the threshold issue, and will treat it before discussing the asserted negligence of the IRS.

## II. *The confidentiality of return information under 26 U.S.C. § 6103*

■ Section 6103(a) of the Internal Revenue Code states tax returns and return information are confidential, and may not be disclosed by officers and employees of the United States or other named individuals who have access to the information except as authorized by Title 26.[2] Violation of the statute gives rise to a civil suit for damages as described in 26 U.S.C. §§ 7431(a)(1) and (c).

(1) *Disclosure by employee of the United States.* If any officer or employee of the United States knowingly, or by reason of negligence, discloses return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

. . . .

(c) *Damages.*—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

(1) the greater of—

(A) $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, or

(B) the sum of—

(i) the actual damages sustained by the plaintiff as a result of the unauthorized disclosure, plus

(ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

(2) the costs of the action.

In *Rodgers v. Hyatt,* the Tenth Circuit addressed the question of whether a prior "in court" disclosure of return information removes a later disclosure from the confidentiality requirements of § 6103. 697 F.2d 899, 83–1 U.S. Tax Cas. par. 9139, 51 A.F.T.R.2d 83–583 (1983). The *Rodgers* prior disclosure occurred in a summons enforcement hearing. There, as here, the government argued the later disclosure did not violate the confidentiality of the taxpayer's returns, because no reasonable expectation of privacy attaches to matters of public record. As supporting authority for its position, the government cited various decisions, the bellwethers of which are *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (broadcasting company did not breach violate privacy of rape victim's father by identifying victim during coverage of rapist's trial because victim's identity was public record), and *Cooper v. IRS,* 450 F.Supp. 752, 77–2 U.S. Tax Cas. par. 9704, 41 A.F.T.R.2d (P–H) 78–1158 (D.C.D.C.1977) (tax returns used in tax-related judicial proceedings do not regain confidential status after being

---

2. Return information is defined in section 6103(b)(2).

(2) *Return Information.* The term 'return information' means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other date, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of

the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written document relating to such written determination ... which is not open to public inspection under section 6110, but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer....

returned to IRS, and thus are not within Freedom of Information Act exemption that exempts from disclosure any document specifically exempted from disclosure by statute). However, the *Rodgers* Court did not consider the confidentiality issue central to its determination whether the disclosure was unlawful under § 6103. Rather, the Court focused on whether the disclosure itself was permitted under the statute, irrespective of any loss of confidentiality that might have resulted from the return information becoming public record. Holding the disclosure was not permitted under the statute because it was not "necessary in obtaining information" (26 U.S.C. § 6103(k)(6)), the Court stated,

We must reject, just as did the trial court, [the Government's] contention that because the 'tax information' disclosed at the April 5, 1979, meeting had been fully developed and disclosed in the course of the ... district court proceeding ..., by virtue of the cross-examination of [the IRS agent], that under *Cooper v. IRS, supra,* and other authorities relied upon by [the Government], the content of the statement had become a matter of public record and, accordingly, could no longer be considered confidential 'return information' within the meaning of § 6103. This case appears to be one of first impression within the context presented. The dearth of case law on the issue has, we believe, led the Government to focus its arguments on the lack of 'confidentiality' in the 'return information' once disclosed on the public court record....

The issue in the case, however (and as submitted to the jury) is not the loss of 'confidentiality' or 'privacy' but, rather, whether under the circumstances, [the IRS agent] made an unauthorized disclosure of tax return information in violation of § 6103, *supra.* Even assuming the loss of confidentiality in the content of the statements, we hold that the April 5, 1979, disclosure was clearly unauthorized.... The fact [the IRS agent] had given prior 'in court' testimony relative to the alleged 'rumors and allegations' which likely removed them from their otherwise 'confidential' cloak, did not jus-

tify [the IRS agent's] violation of the requirement that he, as an officer of the United States is prohibited from disclosing 'return information' absent express statutory authorization....

*Id.* at 906.

Contrary to the government's present assertion that *Rodgers* defies precedent and is anomalous in its holding, other courts have adopted the view that exposure of return information in an "in court" proceeding does not remove the information from the confidentiality requirements of § 6103. In *Olsen v. Egger,* the Southern District Court of New York held the prior use of return information in a state court action to recover alimony and child support does not constitute a " 'waiver' of the statutory right of confidentiality" or guarantee the return information may later be released with impunity. 594 F.Supp. 644, 646, 84-2 U.S.Tax Cas. par. 9844, 54 A.F.T. R.2d (P–H) 84–6217 (S.D.N.Y.1984). *Olsen* set out in full its reasons for rejecting the "waiver theory." *Id.*

Prior to enactment of The Tax Reform Act of 1976, Section 7213 of the Internal Revenue Code prohibited disclosure 'in any manner not provided by law.' 26 U.S.C. § 7213(a) (amended by P.L. 94–455, Sec. 1202(d), 90 Stat. 1686). This language permitted courts to find a waiver of the right to confidentiality of the tax returns and to permit disclosure even though the regulations had not been complied with. *See United States v. Liebert,* 519 F.2d 542, 546 [75–1 U.S. Tax Cas. par. 9576, 36 A.F.T.R. 2d (P–H) 75–5262] (3d Cir.), *cert. denied,* 423 U.S., 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975). The amended version of section 7213 states that disclosure is prohibited 'except as authorized in this title.' 26 U.S.C. § 7213 (1980). Thus, the statute, as amended, does not provide for disclosure beyond that specifically provided for in the 'title' and does not permit the court to create judicial exceptions to the general prohibition against disclosure. *Dowd v. Calabrese,* 101 F.R.D. 427 at 438–39. (D.D.C. 1984); *see* Sen.Rep. No. 938, 94th Cong.2d Sess. 318, *reprinted*

*in* 1976 U.S. Code Cong. & Ad. News 2897 ('the committee felt that returns and return information should generally be treated as confidential and not subject to disclosure *except in those limited situations delineated in the newly amended section 6103* where the committee decided that disclosure was warranted.') (emphasis added). This prohibition against disclosure of the returns, except as provided by statute, may not be circumvented even when the returns relate to a matter in issue during a litigation. *See Garity v. United States,* 81–2 U.S. Tax Cas. par. 9599, at 88,006–08, [46 A.F. T.R.2d (P–H) 80–5143] (E.D.Mich.1980) (returns subject to discovery only if disclosure is permissible under Section 6103). While it is true, as plaintiff suggests, that all that is needed is a 'knowing and intelligent waiver,' *Tierney v. Schweiker,* 718 F.2d 449, 456, [83–2 U.S. Tax Cas. par. 9589, 52 A.F.T.R.2d (P–H) 83–6075] (D.C. Cir.1983), this waiver must be made within the confines of the statute. The statute delegates this judgment to the Secretary so that the regulation promulgated by the Secretary provides the basis for determining whether such a waiver has been made.

*Id.* at 646–47. *Johnson v. Sawyer,* 640 F.Supp. 1126, 86–2 U.S. Tax Cas. par. 9677, 58 A.F.T.R.2d (P–H) 86–5650 (S.D.Tex. 1986), cites with approval and extends the *Rodgers* holding to prohibit press releases containing return information disclosed during the taxpayer's trial. Concerning the legislative history of the statutes governing disclosure of return information, *Johnson* says,

> This Court … believes that Congress made the language of § 6103 quite clear: any disclosure of return information is illegal 'except as authorized *by this title.*' 26 U.S.C. § 6103(a) (emphasis added). The Senate Committee which wrote § 6103 explained that it
>
> > 'reviewed each of the areas in which returns and return information are now subject to disclosure. With respect to each of these areas, the committee has tried to balance the particular office or agent's need for the infor-

mation involved with the citizen's right to privacy and the related impact of the disclosure upon the continuation of compliance with our country's voluntary assessment system. . . . [T]he committee felt that returns and return information should generally be treated as confidential and not subject to dislosure *except in those limited situations delineated in* the newly amended *section 6103* where the committee decided that disclosure was warranted.

Senate Report No. 94–938, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3439, 3747 ("Senate Report") (emphasis added); *see also,* House Conference Report No. 94–1515, *reprinted in* 1976 U.S. Code Cong. & Ad.News 4118, 4180 ("The Senate amendment provides that returns and return information are … not subject to disclosure *except as specifically provided by statute* ") and 4186 (conference amendment to follow that Senate amendment after modifying those specific statutory exceptions). In light of that explicit statutory and legislative history, this Court concludes that it cannot judicially carve any additional exceptions to § 6103's general ban against disclosures. *See also, Rodgers,* [697 F.2d 899]; *Olsen,* [594 F.Supp. at 647]; *Dowd,* 101 F.R.D. at 428–29; *cf. Garity,* [81–2 U.S. Tax Cas. par. 9599, 46 A.F.T.R.2d (P–H) 80–5143].

*Johnson,* 640 F.Supp. at 1132–33, 86–2 U.S.Tax Cas. par. 9677, 58 A.F.T.R.2d (P–H) 86–5650.

In two recent decisions, the court in the Northern District of California expressly rejects *Rodgers* and its progeny, saying the line of cases ignores the well established principle that what transpires in open court is a matter of public record, and does not regain confidentiality after the trial concludes. Both cases, *Figur v. United States,* 662 F.Supp. 515, 87–1 U.S. Tax Cas. par. 9367, 59 A.F.T.R.2d (P–H) 87–1166 (N.D.Cal.1987), and *United Energy Corp. v. United States,* 622 F.Supp. 43, 85–2 U.S. Tax Cas. par. 9557, 56 A.F.T.R.2d (P–H) 85–5593 (N.D.Cal.1985), held that press releases containing return information dis-

closed at the taxpayer's trial are not unlawful disclosures because the information is public record. The reasoning of each rests on the precise arguments rejected by the Tenth Circuit in *Rodgers*. *United Energy* criticizes *Rodgers* for its internal inconsistency saying, "The Tenth Circuit's holding appears at odds with its own reasoning[,]" before quoting a portion of the opinion that seemingly contradicts the holding. *United Energy*, 622 F.Supp. at 46; 85-2 U.S. Tax Cas. par. 9557, 56 A.F.T.R.2d (P-H) 85-5593. However, *United Energy* misreads *Rogers*, because the quoted portion is extracted from the recitation of the government's argument which the *Rodgers* Court exhaustively reviewed and soundly rejected.

It appears *Rodgers* expresses the law of this jurisdiction, particularly where no later Tenth Circuit case law departs from the decision, and a 1986 case, *First West. Govt. Securities v. United States*, makes noncritical reference to it while distinguishing its facts from the *Rodgers* facts. 796 F.2d 356, 359 n. 3, 86-2 U.S. Tax Cas. par. 9549, 58 A.F.T.R.2d (P-H) 86-5401 (10th Cir. 1986). Consequently, this court is bound by the law of the circuit unless the government should persuade it *Rodgers* is totally untenable. Upon examination of the legislative history regarding disclosure of return information as well as the decisional law that follows *Rodgers*, the court is not persuaded the Tenth Circuit erred by limiting its review to the propriety of the disclosure at issue rather than first asking whether the confidentiality of the return information was lost by exposure in previous court action. Therefore, the court determines the prior in court exposure of the Chandlers' return information is not relevant to the decision whether the IRS unlawfully disclosed the information to Western Airlines.

### III. *Negligent disclosure of return information*

The government contends Teller Trebesch is the only IRS employee who could have possibly been guilty of negligence; "his mistake was simply that—a mistake," and therefore "[n]o negligence can be implied from his actions." Government's post trial brief at 8. Further, Teller Trebesch's error is "directly traceable" to the Chandlers' failure to pay their taxes on time and to identify the check with their TIN as instructed in the final demand letter. *Id.*

As support for its argument that simple error does not constitute negligence, the government relies on *Timmerman v. Swenson*, 79-2 U.S. Tax Cas. par. 9588, 44 A.F.T.R.2d (P-H) 5727 (D.Minn.1979). In *Timmerman*, the IRS attempted to collect a delinquent account by levying on the plaintiffs/taxpayers' motor vehicle. An IRS employee mistakenly put the motor vehicle information of another taxpayer in the plaintiffs' file, and consequently a notice of levy was sent to a bank of which the plaintiffs had never been customers. The court held return information was not unlawfully disclosed because the levy resulted solely from an unintentional "ministerial error" by a clerical employee. *Id.* at 79-5731. *Timmerman* rejects the plaintiffs' argument that the policies and guidelines set out in the Internal Revenue Service Manual (specifically those providing notice of levy should be served only where there is evidence or reasonable expectation the party served has property or rights to property of the taxpayer) create a duty or standard of care, the breach of which gives rise to a cause of action for damages under § 7217. The court determined the manual is not legally binding, because the policies and guidelines set forth in it are "directory, not mandatory." *Id.*

In the instant case, the controlling effect of the manual is not at issue; rather, this court must determine whether the actions of the IRS amounted to § 7431(a)(1) negligence. The court does not agree with the government's assertion that the Chandlers must show the IRS personnel acted with intent or wilfulness. Subsection (c) of § 7431 states wilful disclosure or a disclosure that is a result of gross negligence gives rise to *punitive* damages. However, subsection (1) creates a cause of action for negligence with its implied duty of care (which this court interprets as simple negligence), and allows an award of $1,000 dam-

ages for each disclosure resulting from the negligence. The Chandlers do not assert a claim for punitive or actual damages; they merely request statutory damages on the ground the unlawful disclosure resulted from the negligence of IRS personnel.

 The court's review of the facts persuades it the levy was a result of negligence on the part of IRS personnel. First, although Trebesch's error might be considered "ministerial," the court is not convinced Trebesch is the only IRS employee who acted negligently. The court finds disconcerting the fact that even though the Chandlers provided enough information with their check to allow Trebesch readily to access their account by using the SSNAD computer program, their check remained in the unidentified remittance account for two months until Revenue Officer Jernigan became aware of it through the second injunctive suit. It appears the levy could have been prevented had the Service Center made any reasonable attempt to locate the Chandlers' account by using SSNAD or merely requesting a teller at the Salt Lake IRS Office to run the same computer search Trebesch ran. Further, although sufficient identification accompanied the check to allow the IRS to notify the Chandlers of the missing TIN, no notification was attempted. It appears the check would have remained in the unidentified remittance account indefinitely had the Chandlers not filed their second injunctive suit, even though IRS employees knew or should have known the collection process could be commenced against the taxpayer/payor. Their failure to make a reasonable effort to locate the Chandlers' account is actionable negligence.

The court is not moved from this conclusion by the government's argument the Chandlers brought the levy on themselves by failing to pay the penalty within ten days from the demand letter. The Chandlers did not pay the penalty at that time because they filed suit to challenge the penalty assessment itself, and they sent the check by certified mail the day after their suit was dismissed. The court does not consider the delay caused by the chal-

lenge justification for the IRS actions after the check was sent. Nor is the court persuaded the Chandlers should be deprived relief because they did not identify the check by their TIN. The Chandlers testified they included with their check a cover letter, a document locator number and the final demand letter. The government asserts the final demand letter was not included. Irrespective of which version of the facts is correct, the Chandlers sent sufficient identification for Trebesch to locate their account on SSNAD, and, as stated, the Service Center's failure to avail itself of that computer system or a similar search method and its failure to attempt notification of the Chandlers constitute negligence.

Accordingly, court awards the Chandlers damages of $1,000 damages for one act of unauthorized disclosure of return information as provided in 26 U.S.C. § 7431(c)(1).