**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SCOTT D. MANN and CONSTANCE L.
MANN,

      Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 98-2201

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-97-0882-MV/LCS)**

Michael M. Noyes for Plaintiffs-Appellants.

Jonathan S. Cohen (Ann B. Durney and John A. Dudeck, Jr., Attorneys, on the briefs), Tax Division, Department of Justice, Washington, D.C., for Defendant-Appellee.

Before **MURPHY** and **HOLLOWAY**, Circuit Judges, and **COOK,** District Judge.[*]

**COOK,** District Judge.

---

    [*]   The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

Plaintiffs-Appellants Scott Mann and Constance Mann bring this appeal from a final order and judgment of the United States District Court for the District of New Mexico, granting in part defendant-appellee's motion for summary judgment. We have jurisdiction by virtue of 28 U.S.C. § 1291, and we affirm.

## Background

In December 1995, appellants filed their joint federal tax return for the 1994 tax year. On their return, appellants stated that they had received $133,381.00 in "non-taxable compensation." Appellants reported an adjusted gross income and taxable income in the amount of zero dollars. Appellants further reported federal income tax withheld in the amount of $6,780.00, and they sought a refund in that amount.

In February 1996, the Internal Revenue Service ("IRS") sent a letter to appellants explaining that certain changes had been made to their return and that taxes were due. The letter indicated that appellants' corrected, adjusted gross income totaled $133,381.00, and that their corrected taxable income totaled $122,131.00. The letter further indicated that appellants' 1994 tax liability totaled $30,165.10, and that appellants had underpaid their tax liability by $23,385.10. In addition to the underpayment, the IRS also demanded the payment of a penalty in the amount of $5,846.28 and interest in the amount of $2,386.41. Thus, the IRS initially demanded that appellants pay $31,617.79.

In March 1996, appellants responded in writing[1] to the IRS's letter. Appellants set forth various arguments in support of their opinion that no taxes were due, and they requested a refund of the taxes withheld. The IRS did not send a notice of deficiency to appellants or otherwise respond to appellants' letter, but, in late March 1996, the IRS sent appellants a notice of intent to levy. In that notice, the IRS demanded payment of $32,007.96, which included additional penalties and interest.

The IRS initially assigned the matter to its Automated Collection System Branch in May 1996 and later to Revenue Officer Joan Adams in November 1996. From May 1996 through April 1997, the IRS issued several notices of levy to various banks and businesses, which, the IRS believed, had engaged in business with Scott Mann. The IRS also filed a notice of federal tax lien with the Dona Ana County Recorder, and it sent a final demand notice to Medicine Mound Enterprises, which was believed to be Mr. Mann's employer at that time.[2] Each notice contained one or more of the following items: appellants' names, their address, one or both of appellants' social security

---

[1] The district court treated this letter as a request for abatement.

[2] On May 20, 1996, the IRS issued levies to First Federal Savings Bank and Sun Microsystems. On May 21, 1996, the IRS issued the notice of federal tax lien. On June 24, 1996, the IRS issued a levy to Maricopa County Community College. On July 17, 1996, the IRS issued a levy to Sun Microsystems. On July 24, 1996, the IRS issued a levy to Pointsource Communications. On March 6, 1997, the IRS issued notices of levy to Sun Microsystems, Sun Microsystems Computer Corporation, First Federal Savings Bank, First Federal Savings Bank NM, Maricopa County Community College, and Pointsource Communications. On March 17, 1997, the IRS issued a notice of levy to Medicine Mound Enterprises. On April 16, 1997, a final demand was issued to Medicine Mound Enterprises.

numbers, type of tax, tax period, unpaid balance, statutory additions, and amount due.

In February 1997, Ms. Adams issued two administrative summonses to Mr. Mann, requesting his testimony and records for the 1994 and 1995 calender years. Mr. Mann was instructed to appear at Ms. Adams' office on March 6, 1997. Mr. Mann failed to appear, and he further failed to contact Ms. Adams prior to the scheduled meeting. Ms. Adams thus referred the matter to IRS District Counsel on March 6, 1997, to seek judicial enforcement of the summonses.

In April 1997, the IRS District Counsel sent appellants a letter threatening judicial enforcement of the summonses if Mr. Mann did not comply. In May 1997, Mr. Mann contacted Ms. Adams and arranged a meeting with her. Mr. Mann appeared at the meeting with two other individuals. When one of the individuals did not provide his name when initially asked, Ms. Adams terminated the meeting.

On July 1, 1997, appellants filed this action in the United States District Court for the District of New Mexico. Appellants sought injunctive relief against the IRS under 26 U.S.C. § 6213(a) and damages for wrongful disclosure of tax return information under 26 U.S.C. §7431. Appellants based their complaint on the undisputed fact that the IRS never sent a deficiency notice to them, and they alleged that, because of this failure and because the IRS engaged in collection activity at a time when it was prohibited from doing so, the disclosure of their tax return information in the lien and levy notices was wrongful. Appellants later filed an amended complaint seeking witness and mileage fees and costs

for attending the May 1997 meeting with Ms. Adams.

On January 5, 1998, the government filed its motion for summary judgment. Appellants filed their response to the government's motion, and they also moved for summary judgment. On July 1, 1998, the trial court entered its order and judgment granting in part the government's motion and granting in part appellants' motion. Specifically, the trial court concluded that the disclosure of appellants' tax information by the IRS did not violate 26 U.S.C. § 6103, and that, therefore, appellants had no cause of action under 26 U.S.C. § 7431. However, the court enjoined the IRS from any further collection efforts until the IRS complied with the provisions of 26 U.S.C. §§ 6212 and 6213.[3] The trial court further held the IRS liable to Mr. Mann for witness and mileage fees, but it ordered that such fees may be offset against appellants' outstanding tax liability.

The issues raised by appellants in this appeal are: (1) whether the lower court erred

---

[3]    In granting the injunction, the court reasoned that the IRS had impermissibly engaged in collection activity at a time when all collection activities were to be stayed. The court found that appellants were entitled to a sixty-day stay of collection activity after the IRS sent the notice of correction to appellants, during which appellants had the right to request an abatement. Further, since the court found that appellants did request an abatement following their receipt of the IRS's notice of correction, the court concluded that the IRS was required to send a deficiency notice to appellants and stay further collection activity for a period of ninety days. Because the IRS failed to comply with the periods in which collection activity was to be stayed and because the IRS failed to send the required deficiency notice, the court concluded that appellants were entitled to an injunction prohibiting further collection activities until the proper procedures are followed. We assume these conclusions are correct, as the issue regarding the injunction is not before this court.

in concluding that the IRS did not violate 26 U.S.C. § 6103(k)(6) by disclosing tax return information in the lien and levy notices, at a time when the IRS was statutorily prohibited from engaging in collection activity, and (2) whether the lower court erred in permitting the IRS to offset appellants' witness and mileage fee award against their outstanding tax liability. The issues regarding the propriety of the injunction imposed against the IRS below and the trial court's determinations regarding the stay of collection activity and requirement for a notice of deficiency are not before this court.[4]

## Discussion

We review *de novo* the district court's grant of summary judgment, applying the same standard used by the district court. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Williams v. Widnall, 79 F.3d 1003, 1005 (10th Cir. 1996) (quoting Fed. R. Civ. P. 56(c)). We examine the record to determine whether any genuine issue of material fact is in dispute, construing the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. Curtis v. Oklahoma City Public Schools Board of Education, 147 F.3d 1200, 1214 (10th Cir. 1998). If there is no dispute

---

[4] As the issues are not before us, we will assume that the district court was correct in holding that a notice of deficiency was required, that the IRS failed to follow proper collection procedures, and that the IRS was statutorily prohibited from engaging in collection activity at all times relevant to this case.

concerning a genuine issue of material fact, we determine whether the district court correctly applied the substantive law, <u>Peck v. Horrocks Engineers, Inc.</u>, 106 F.3d 949, 951 (10th Cir. 1997), and we review *de novo* the district court's conclusions of law. <u>Woodcock v. Chemical Bank</u>, 45 F.3d 363, 367 (10th Cir. 1995).

Appellants alleged in their complaint that the IRS wrongfully disclosed tax return information when it issued notices of levy to banks and businesses which had conducted business with appellants, filed a notice of federal tax lien with the Dona Ana County Recorder, and issued a notice of final demand to Medicine Mound Enterprises. Appellants argued below that the disclosure was wrongful because the IRS did not follow the correct assessment and collection procedures, i.e., that the IRS did not issue the required deficiency notice to appellants and cease collection activity for the statutorily prescribed period of time prior to issuing the above notices to third parties. On appeal, appellants argue that this case involves a claim for damages for disclosures of tax information when the IRS was statutorily barred from engaging in collection activity. Appellants also argue that since the IRS had already determined the amount of tax that was due, it was not authorized to disclose return information under the Internal Revenue Code provision permitting disclosures for the purpose of obtaining information. That is, appellants argue that the lien and levy notices were not issued for the purpose of obtaining information and were therefore unauthorized.

The government argued below in its motion for summary judgment that two

statutory provisions are relevant to the wrongful disclosure issue alleged in appellants'

complaint. The government first cited 26 U.S.C. § 7431, which provides for civil

damages for the unauthorized disclosure of returns and return information. The

government next cited 26 U.S.C. § 6103(k)(6), which provides that certain disclosures of

returns and return information are authorized. The government also cited 26 C.F.R.

§ 301.6103(k)(6)-1(b)(6), which is the regulation implementing § 6103(k)(6). The

government argued that the disclosures in the lien and levy notices were authorized under

§ 6103(k)(6) and the regulations, and, therefore, appellants could not maintain a cause of

action under § 7431 for wrongful disclosure. However, on appeal, the government states

at page three of its supplemental brief that, "In briefest summary, it is our position that

Section 7433 of the Internal Revenue Code provides the exclusive monetary damages

remedy where allegedly unauthorized disclosures of federal tax return information are

made in the course of collection activity, which collection activity is itself authorized by

the Code." This is the first instance in which the government expressed such reliance

upon § 7433.[5]

A review of the record reveals that the government did not raise the issue of

---

[5]    At the time relevant to this action, § 7433(a) provided, "If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States . . .. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions."

§ 7433's exclusivity provision below, and it is clear from the record that the lower court did not rely upon § 7433 in rendering its decision. Indeed, § 7433 is not even mentioned in the lower court's order and judgment disposing of this case.[6] Moreover, although the government gave scant attention to § 7433 in its initial brief on appeal, it is not until the government's supplemental brief on appeal that it appears to base a firm reliance on the seemingly controlling exclusivity provision of § 7433, devoting much of its supplemental brief to that section.

Issues and arguments which are not raised below will not ordinarily be considered on appeal. We have said on numerous occasions that "appellate courts have discretion to hear matters not raised or argued below. . . . However, this court will do so only in the most unusual circumstances. . . . Those circumstances may include issues regarding jurisdiction and sovereign immunity, . . . and instances where public interest is implicated, . . . or where manifest injustice would result." Rademacher v. Colorado Assoc. of Soil Conservation Districts Medical Benefit Plan, 11 F.3d 1567, 1571-72 (10th Cir. 1993) (citations and quotations omitted). "The general rule, however, is that the failure to raise the issue with the trial court precludes review except for the most manifest error." Id. at

---

[6]    The government states at page three of its supplemental brief on appeal that, "Because taxpayers did not raise any claim under Section 7433, . . . the court had no occasion to consider, and did not consider, that provision in reaching its decision." It is just as true, however, that because the government did not raise § 7433 below as a defense to appellants' action under § 7431, the district court had no occasion to address the application of § 7433.

1572.

Because we conclude that the disclosures at issue here were authorized under § 6103(k)(6) and the relevant regulations, we may affirm the judgment of the lower court without addressing the exclusivity provision of § 7433. While an analysis of the interplay between §§ 7431 and 7433 certainly seems appropriate in the present case, we nevertheless reserve the question of whether § 7433's exclusivity provision precludes an action under § 7431 where unauthorized disclosures are made in the course of collection activity.

Section 7431(a) provides that, "If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States . . .." Section 6103(a) states the general rule that returns and return information shall be confidential, and that, except as authorized, no officer or employee of the United States shall disclose any return or return information obtained by him in the course of his employment. Section 6103 contains several exceptions to the general rule of non-disclosure, and one such exception is contained in § 6103(k)(6). That section provides that,

> An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to

10

be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

The regulation implementing § 6103(k)(6) provides that,

> In connection with the performance of official duties relating to any . . . collection activity, . . . an officer or employee of the [IRS] is authorized to disclose return information . . . in order to obtain necessary information relating to the following -- . . . (6) To establish or verify the financial status or condition and location of the taxpayer against whom collection activity is or may be directed, to locate assets in which the taxpayer has an interest, to ascertain the amount of any liability . . . to be collected, or to otherwise apply the provisions of the Code relating to establishment of liens against such assets, or levy on, or seizure, or sale of, the assets to satisfy any such liability. 26 C.F.R. § 301.6103(k)(6)-1(b)(6).

Notwithstanding appellants' emphasis and misplaced reliance on § 6103(k)(6)'s title, "Disclosure by internal revenue officers and employees for investigative purposes,"[7] we have said that "§ 6103(k)(6) authorizes an IRS employee to disclose tax return information in the issuance of liens and levies. Thus, the general rule is that liens and levies do not constitute unauthorized disclosures under § 6103." Long v. United States, 972 F.2d 1174, 1180 (10th Cir. 1993). We cited in Long not only the language of § 6103(k)(6), but also the Treasury Regulations, which provide "specific authority to 'apply the provisions of the Code relating to establishment of liens against . . . assets [in

---

[7]     Appellants argue that § 6103(k)(6) only permits the IRS to investigate or obtain information. Because the lien and levy notices were issued for the purpose of collecting tax and not for investigating or obtaining information, appellants argue that § 6103(k)(6) cannot provide the authority for the issuance of such notices. For the reasons stated herein, we reject this argument.

11

which the taxpayer has an interest], or levy on, or seizure, or sale of, the assets to satisfy any such [tax] liability.'" Id. (quoting 26 C.F.R. § 301.6103(k)(6)-1(b)(6)). Thus, § 6103(k)(6) and the relevant regulations do permit disclosure of tax return information when made in notices of lien and levy, to the extent necessary to collect on taxes assessed.[8]

Appellants also argue that the disclosures contained in the notices of lien and levy were unauthorized because the IRS failed to issue a notice of deficiency prior to attempting to collect on appellants' tax liability, and because the IRS engaged in collection activity at a time when it was statutorily prohibited from doing so. The district court found that appellants' argument that "the underlying means of disclosure must be valid before the safe harbor of § 6103(k)(6) applies goes against the plain wording of the statute and the case law." Thus, the lower court held that all disclosures at issue were authorized under § 6103(k)(6) and, therefore, "even if there were procedural deficiencies rendering the levies defective, no cause of action arises under . . . § 7431." We agree.

Appellants argue that Chandler v. United States, 687 F.Supp. 1515 (D.Utah 1988), aff'd per curiam, 887 F.2d 1397 (10th Cir. 1989), compels the conclusion that the

---

[8]    If there is any question regarding the scope of the authorization granted in § 6103(k)(6) to disclose tax return information in the context of the issuance of liens and levies for the purpose of collecting an assessed tax, the ambiguity is eliminated in the regulations which specifically and unquestionably authorize the disclosure of return information to establish liens against, or levy on, assets to the extent necessary to collect such tax.

disclosures at issue were unauthorized and that § 7431 provides for a statutory remedy with respect to each such disclosure.[9] In Chandler, the taxpayers were assessed a $500 frivolous return penalty by the IRS. The taxpayers ultimately remitted payment to the IRS by certified mail, but they failed to include their taxpayer identification number on the payment. When the IRS received the payment, a teller accessed the taxpayers' account on an IRS computer for the purpose of determining to which taxpayer identification number to credit the payment. However, instead of recording the first three digits of their primary taxpayer identification number on the payment, the teller copied the three-digit street address of the taxpayers' residence. The teller sent the payment to the IRS Service Center for crediting to the taxpayers' account, but the Service Center could not locate an account with the indicated taxpayer identification number. The taxpayers' payment was placed in an unidentified remittance account. As a result of the failure to properly credit the taxpayers' account, the IRS issued a notice of levy to the employer of one of the taxpayers to collect the assessment. The IRS subsequently located the taxpayers' payment and credited it to their account. The taxpayers filed suit alleging that the IRS negligently

---

[9]   We note at the outset that Chandler was decided prior to the November 10, 1988, effective date of § 7433, see Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, § 6241(a), 102 Stat. 3342, 3747 (1988), which, as noted above, provides for civil damages for certain unauthorized collection actions. Since Chandler addressed tax return disclosures made by the IRS in a notice of levy which was issued during collection efforts, Chandler's determination that § 7431 permits recovery in such a case is questionable, in light of § 7433(a)'s provision that it is the exclusive remedy for recovering damages resulting from collection actions.

issued the notice of levy, which contained an unlawful disclosure of return information.

The district court in <u>Chandler</u> held that the IRS negligently disclosed the taxpayers' return information when it issued the notice of levy. The court stated that, "The court's review of the facts persuades it the levy was a result of negligence on the part of IRS personnel. . . . It appears the levy could have been prevented had the Service Center made any reasonable attempt to locate the [taxpayers'] account by . . . merely requesting a teller at the Salt Lake IRS Office to run [a] computer search." <u>Chandler</u>, 687 F.Supp. at 1521. The court held that the IRS's "failure to make a reasonable effort to locate the [taxpayers'] account is actionable negligence," and the court awarded the taxpayers $1,000 damages for one act of unauthorized disclosure of return information, pursuant to § 7431(c)(1). <u>Id.</u> The government appealed, and we affirmed "for substantially the reasons stated by the district court." <u>Chandler v. United States</u>, 887 F.2d 1397 (10th Cir. 1989) (per curiam).

While <u>Chandler</u> may appear, at first blush, to support appellants' argument here, we agree with the lower court that <u>Chandler</u> "focused on whether the conduct leading up to the disclosure violated § 7431(a)(1) and not on the validity of the vehicle of the disclosure." As the lower court noted, appellants here "contend that because the vehicle of the disclosure was imperfect, the disclosure itself violates § 7431(a)(1)." The <u>Chandler</u> holding was based on the fact that the IRS acted unreasonably and negligently in pursuing collection efforts against the taxpayers after the taxpayers had already remitted the

14

demanded payment.  The district court in <u>Chandler</u> found that the IRS's failure to locate

the taxpayers' account constituted actionable negligence, and, if not for this negligence,

the levy containing the disclosures would not have been issued.  The decision was based

on the fact that there was never any reason to issue the notice of levy, as the tax liability

had been paid.  That is, after the taxpayers remitted payment, there was no tax to be

collected and there was no justification for continuing collection activity, issuing the levy

or disclosing of tax return information.[10]

_____

[10]   The government argues that the district court in <u>Chandler</u> "apparently assumed that if the levy itself was negligently made, then the disclosure of return information in that notice of levy necessarily was unauthorized under Section 6103(k)(6)."  It should be noted that, as the government points out, neither this court nor the lower court in <u>Chandler</u> addressed the argument that the propriety of the levy was irrelevant to the determination of whether the disclosures were authorized under § 6103(k)(6).  The government represents that although it did not argue in the district court that the purported invalidity of the levy was irrelevant to the disclosure issue, it did advance the argument on appeal.  Nevertheless, this court affirmed the district court in <u>Chandler</u> for substantially the reasons stated by the lower court. However, this should not necessarily be construed as an indication that we believed that the government's argument, raised for the first time on appeal, lacked merit.  Rather, as noted above, arguments which are not presented below will ordinarily not be considered on appeal, and we therefore had no occasion to consider this argument on appeal.  Unlike <u>Chandler</u>, this issue is now directly and properly before us.

Additionally, as noted above, <u>Chandler</u> was decided prior to the passage of § 7433, at a time when taxpayers had no specific right to bring an action against the government in damages for unauthorized collection activity.  <u>See</u> H.R. Rep. No. 100-1104, 100th Cong., 2d Sess. 228 (1988) <u>reprinted in</u> 1988 U.S.C.C.A.N. 5288.  By virtue of § 7433, taxpayers now have a right to bring an action against the government for damages for unauthorized collection activity, under that section.  And, Congress recently broadened this right, after this action was filed, by permitting lawsuits under § 7433 for the negligent disregard by any officer or employee of the IRS of any provision of the Code and its regulations.  <u>See</u> Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, § 3102(a)(1)(A), 112 Stat. 685, 730 (1998).  It is therefore clear that had the

15

However, unlike Chandler, the IRS in this case issued the notices of levy and lien in order to collect on a tax liability that appellants refused to pay. Simply because the collection procedure was technically defective, for failure to issue a notice of deficiency and for failure to cease collection activity during the prescribed period of time, it does not follow that the disclosures contained in the notices of levy and lien were unauthorized.

Sections § 6103 and 7431 address improper disclosure of tax return information and not improper collection activity.[11] Venen v. United States, 38 F.3d 100, 105 (3ʳᵈ Cir. 1994). We therefore agree with the district court that the validity of the means by which the return information was disclosed is irrelevant to whether the disclosure of the information violated § 6103. We further agree with the district court and the majority of courts which have considered the issue that there is nothing in § 6103 which requires that the underlying means of disclosure be valid before the safe harbor of § 6103(k)(6) applies. See Wilkerson v. United States, 67 F.3d 112, 116 (5ᵗʰ Cir. 1995) (validity of underlying collection activity is irrelevant to issue of whether disclosure is wrongful); Venen, 38 F.3d at 105-106 (in an action based on disclosure in an improper levy, the concern is not improper information handling but on improper collection activity; thus,

_____

taxpayers in Chandler brought their action against the government today, their proper remedy would lie in § 7433 and not in § 7431. Thus, any reliance on Chandler for permitting a cause of action to be maintained under § 7431 for conduct occurring in connection with the collection of tax is questionable.

[11]   As the Third Circuit recognized in Venen, "Collection activity is a separate sphere of IRS activity governed by a separate body of law. . . . The enforcement mechanism for collection provisions is 26 U.S.C. § 7433." Id. 38 F.3d at 105.

16

validity of underlying collection action, e.g., the validity of the levy, is irrelevant to whether disclosure is authorized under § 6103 and the basis for liability under § 7431); Huff v. United States, 10 F.3d 1440, 1447 (9th Cir. 1993) (defects in collection procedure underlying levy notice do not subject IRS to liability for improper disclosure of return information); but see Rorex v. Traynor, 771 F.2d 383, 386 (8th Cir. 1985) (disclosure in unlawful levy violates § 6103(a) and is not authorized under § 6103(k)(6)). Indeed, the "plain language of section 6103 . . . mandates the conclusion that the lawfulness of the levy is irrelevant to whether disclosure is authorized. . . . Neither the statute nor the regulations on their face authorize the court to consider whether the collection activity itself is proper." Venen, 38 F.3d at 106.

It is plain from the record that the lien and levy notices were issued by the IRS in its effort to collect tax from appellants and that the disclosures contained therein were limited to information necessary to effectuate such lien and levies. As such, the disclosures fall squarely within the safe harbor exception of § 6103(k)(6). It is irrelevant to the proper determination of this case that the collection activity should have been preceded by a notice of deficiency and that the IRS should not have been engaging in collection activity at the time the notices were issued. Since the validity of the lien and levies is immaterial to the issue of whether the disclosure contained in those notices is authorized under § 6103, and since the disclosures here were made for the purpose of establishing a lien against, and levying on, appellants' assets to satisfy their tax liability,

17

the disclosures were proper, and there is no liability under § 7431. See Venen, 38 F.3d at 107 (because the IRS disclosed taxpayer's return information in pursuit of a levy, the IRS did not violate § 6103 and is not liable under § 7431).

We lastly find meritless appellants' argument that the district court abused its discretion in ordering that Mr. Mann's witness and mileage fees may be offset against his outstanding tax liabilities, if any. The trial court did not permanently enjoin the IRS from seeking to collect on appellants' tax liability for the 1994 tax year; rather, the court merely enjoined such efforts until the IRS has complied with the provisions of 26 U.S.C. §§ 6212 and 6213. Hence, it is possible, if not likely, that the IRS will again seek to collect on appellants' tax liability, and it was proper for the court to order that such witness and mileage fees be offset against appellants' tax liability.

**Affirmed.**

18