Jimmie D. and Cheryl RODGERS,
Plaintiffs,

Jim's Water Service, Inc.,
Plaintiff-Appellee,

v.

Larry R. HYATT, in his personal capacity and as Chief, Criminal Investigation Division, Office of the District Director, Colorado District, Internal Revenue Service, Department of the Treasury, Defendant-Appellant.

No. 81–1283.

United States Court of Appeals,
Tenth Circuit.

Jan. 10, 1983.

Rehearing Denied March 17, 1983.

Joseph H. Thibodeau, Denver, Colo., for plaintiffs.

Gayle P. Miller, Atty., Tax Div., Dept. of Justice, Washington, D.C. (John F. Murray, Acting Asst. Atty. Gen., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D.C., and Joseph F. Dolan, U.S. Atty., Denver, Colo., with her on the briefs), for defendant-appellant.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Larry R. Hyatt, defendant below, appeals from a judgment awarding plaintiff-appellee, Jim's Water Service, Inc., whose stock is entirely owned by Jimmie D. Rodgers, $1,000.00 in damages following a jury ver-

dict. Suit was brought by Jim's Water Service, hereafter referred to as Taxpayer, pursuant to I.R.C. § 7217 (West Supp. 1981),[1] alleging that Hyatt, an Internal Revenue Service official, made disclosure of Taxpayer's federal tax "return information" in violation of I.R.C. § 6103 (West 1980).[2] A brief recital of the facts will facilitate our review.

On February 5, 1979, a hearing was held in the United States District Court for the District of Wyoming on a petition filed by the United States to enforce an Internal Revenue Service (IRS) summons issued to the First National Bank of Gillette, Wyoming, in connection with income tax liabilities of Jimmie D. Rodgers and Cheryl Rodgers, husband and wife. Hyatt, then serving as Chief, Criminal Investigation Division, Office of the District Director, Colorado District of IRS, was subpoenaed as a witness by Rodgers. Counsel for Rodgers elicited from Hyatt that: IRS was investigating the correctness of income tax due and owing to the United States by the Rodgers for certain years; the IRS suspected that the Rodgers' returns were not correct based upon certain allegations that all of the income received by them had not been reported and tax paid thereon; and that there were allegations, based upon information from the Sheriff's Department in Gillette and the FBI, that Jimmie Rodgers was dealing in stolen oil and was not reporting all income received from the sale of that oil. This testimony was elicited, we repeat, by counsel for Taxpayer. The district court ordered enforcement of the summons. The bank appealed to this court. We affirmed and observed that the IRS investigation of the Rodgers' income tax returns for the years 1975, 1976 and 1977 was instituted in April of 1978 "following receipt of information from the Campbell County, Wyoming Sheriff's Office and the FBI that the taxpayers were allegedly receiving and selling stolen oil and that there was a possibility of unreported income in these activities." *United States v. MacKay,* 608 F.2d 830, 832 (10th Cir.1979).

The genesis of this lawsuit involves a meeting held on April 5, 1979, in the offices of Amax Coal Company in Gillette, Wyoming, involving Messrs. Jack Lautenschlager and Robert Brackett of Amax, Hyatt and Special IRS Agent Betty Lou Moses. In the course of that meeting Hyatt made reference to the allegations that Jim's Water Service, Inc. was rumored to be involved in stealing oil. Taxpayer alleged

---

1. I.R.C. § 7217 provides that whenever any person knowingly or negligently discloses a "return or return information" (as defined in 26 U.S.C.A. § 6103(b)) with respect to a taxpayer in violation of the provisions of § 6103, such taxpayer may bring a civil action for damages against such person.

   In the case at bar the parties stipulated prior to trial that if liability was found, the damages would amount to the statutory minimum of $1,000.00.

2. I.R.C. § 6103 limits the disclosure of federal income tax returns and return information in an effort to maintain their confidentiality. The statute delineates permissible disclosure. The parties agree that the "return information" disclosed by Hyatt was unauthorized unless, as a matter of law, it was specifically sanctioned.

   The term "return information" is defined under § 6103(b)(2)(A) to mean:

   a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, . . . .

   Disclosure of return information can be made only if "authorized" under § 6103(a):

   (a) General Rule.—Returns and return information shall be confidential, and except as authorized by this title—

   (1) no officer or employee of the United States,

   \* \* \* \* \* \*

   shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

that Hyatt had violated the confidentiality provisions of § 6103, *supra,* by disclosing this "return information". Hyatt admitted that he did make reference to the "rumors and allegations" during the aforesaid meeting, but asserted that such disclosure was properly made pursuant to an IRS investigation of Taxpayer then being conducted.

This action was originally tried to a jury, Honorable Fred M. Winner presiding, in March, 1980. The jury returned a verdict in favor of Hyatt. However, Rodgers' motion for new trial, based upon misconduct of Government (Hyatt's) counsel, was granted. Judge Winner recused upon retrial.

The case was retried before a jury, Honorable Jim R. Carrigan presiding, in January, 1981. It is the jury verdict and judgment of $1,000.00 awarded Jim's Water Service, Inc. against Hyatt and the denial of Hyatt's motion for judgment notwithstanding the verdict upon retrial which is the subject of this appeal.

On appeal, Hyatt contends that the trial court erred in (1) granting Taxpayer's motion for new trial on the ground of misconduct on the part of counsel for Hyatt (at first trial), and (2) refusing to grant judgment for Hyatt, as a matter of law, on the ground that the prior "in court" disclosure of the return information removed the statements made by Hyatt from the confidentiality requirements of § 6103, *supra.*

### I.

Hyatt contends that the trial court (Honorable Fred M. Winner, presiding judge at first trial) abused his discretion in granting Taxpayer's motion for new trial.

In *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) the Supreme Court, speaking of a trial court's authority to grant a new trial pursuant to Fed.R.Civ.P. 59 said, *inter alia:*

A litigant is free to seek review of the propriety of such an order [grant of new trial] on direct appeal after a final judgment has been entered. Consequently, it cannot be said that the litigant "has no other adequate means to seek the relief he desires." *The authority to grant a*

*new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court.* Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is "clear and indisputable." *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 666 [98 S.Ct. 2552, 2559, 57 L.Ed.2d 504] (1978) (plurality opinion).

449 U.S. at p. 36, 101 S.Ct. at p. 191. [Emphasis supplied]. *Accord: Thompson v. Kerr-McGee Refining Corp.,* 660 F.2d 1380 (10th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982); *Frank v. Bloom,* 634 F.2d 1245 (10th Cir. 1980); *Holmes v. Wack,* 464 F.2d 86, 89 (10th Cir.1972) (trial court decision will not be reversed absent a gross abuse of discretion); 11 Wright & Miller, Federal Practice and Procedure: Civil §§ 2803, 2809 (1973).

The plaintiffs, Rodgers and Jim's Water Service, Inc., filed a motion for judgment notwithstanding the verdict, or, in the alternative, new trial on April 3, 1980, setting forth in detail multiple allegations of prejudice allegedly practiced upon them by counsel for Hyatt, noted by the trial court and repeated following trial court admonitions, *i.e.,* opening statement remarks and trial comments alluding to FBI involvement in supplying information that plaintiffs had allegedly stolen oil, which was not established at trial; that the stolen oil "rumors" reported by Hyatt on April 5, 1979, had been heard by "others" who were not identified and who did not testify; the repeated suggestion or inference that plaintiffs were being investigated for or had been charged with stealing oil, which was not established; persistent conveyance to jury of irrelevant and prejudicial matters drawn from the IRS's criminal investigation file; abuse of pretrial discovery in face of trial court's express orders to provide such material, specifically §§ 6103 and 7217 material; failure of Hyatt's counsel to submit a pretrial statement as ordered by the trial court. [R., Vol. II, pp. 171–173]. The trial court granted the motion for new trial by order of May 29, 1980, which reads in part:

The motion asserts many grounds, and I think that several of the assigned reasons have merit. If Department of Justice and Internal Revenue Service lawyers want me to air more of the story as to misconduct, I can and will do so. However, at this time I do not elect to sully the record with details, and suffice it to say that the conduct of government agents and counsel in this case does no credit to the legal profession and it does no credit to some government agents and lawyers involved. There has been obfuscation, delay, defiance of court orders and disregard for canons of professional responsibility.

\* \* \* \* \* \*

... I think that justice demands a new trial, but I fear that with this expression of displeasure with government counsel, if I try the case again it could create an atmostphere [sic] of prejudice. Therefore, I grant the motion for new trial and I recuse myself.

[R., Vol. II, p. 174].

■ We have reviewed the trial record. We hold that the trial court did not err in granting plaintiffs' motion for new trial. The record is replete with admonishments by the trial court directed to counsel for Hyatt, many of them repeated, which, in a cumulative perspective, constitute prejudicial trial conduct. Under no circumstance could it be held that the trial court's grant of the new trial was a gross abuse of discretion.

II.

Hyatt contends that the judgment following the jury verdict upon retrial (Honorable Jim R. Carrigan presiding) is erroneous and that the trial court erred by refusing to grant judgment for Hyatt as a matter of law. This contention is advanced on the ground that the prior "in court" [Wyoming enforcement summons proceeding action] disclosure of the "return information" removed the April 5, 1979, statement made by Hyatt at the Amax Coal offices in Gillette, Wyoming, from the confidentiality requirements of § 6103, *supra.*

Hyatt's primary reliance on the contention that his remarks at the April 5, 1979, meeting were exempt from the confidentiality requirement of § 6103, *supra,* rests on a line of cases holding that there can be no reasonable expectation of privacy to matters which are of public record. Hyatt's contention [Opening Brief, pp. 19–23] is:

It is well established under the law dealing with actions for invasion of privacy that no reasonable expectation of privacy attaches to those matters that are a matter of public record. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 [95 S.Ct. 1029, 43 L.Ed.2d 328] (1975); see *Cooper v. IRS,* 450 F.Supp. 752 (D.C.D.C.1977); *Lincoln v. Denver Post* [31 Colo.App. 283], 501 P.2d 152 (Colo.App.1972). See Restatement (Second) of Torts, Explanatory Notes, Section 652D, comment *b,* at 385 (1977), which states—

There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record \* \* \*.

Cf. *Time, Inc. v. Hill,* 385 U.S. 374 [87 S.Ct. 534, 17 L.Ed.2d 456] (1974); *King v. Califano,* 471 F.Supp. 180 (D.C.D.C.1979); *United States v. Alberico,* 453 F.Supp. 178 (Colo.1977); *Harper v. United States,* 423 F.Supp. 192 (S.C.1976). *Calhoun v. Wells,* 80–2 U.S.T.C. para. 9643 (S.C. July 30, 1980). It is equally well established that what transpires in open court is a matter of public record. *Nixon v. Warner Communications,* 435 U.S. 589, 597 [98 S.Ct. 1306, 1311, 55 L.Ed.2d 570] (1978); *Craig v. Harvey [Harney],* 331 U.S. 367, 374 [67 S.Ct. 1249, 1254, 91 L.Ed. 1546] (1974); *Sloan Filter Co. v. El Paso Reduction Co.,* 117 F. 504 (Colo.Cir.1902); *Cooper v. IRS, supra.* As the Supreme Court has stated (*Craig v. Harvey* [Harney] *supra* [331 U.S.], at 374 [67 S.Ct. at 1254])—

A trial is a public event. What transpires in the courtroom is public property. If a transcript of the court proceedings had been published, we sup-

pose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself, may have reflected on the court. Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

Thus, there can be no action for invasion of privacy based upon the disclosure of information that has been the subject of a prior, open court proceeding. Cf. *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136 (4th Cir.1970).

Applying these principles to the instant case, it is plain that the District Court erred in refusing to grant summary judgment in appellant's favor in view of the fact that the statement complained of was already a matter of public record. As demonstrated above, taxpayer's suit under Section 7217 of the Code is nothing more nor less than a statutorily sanctioned suit for invasion of privacy. Under the aforementioned authorities, however, there can be no invasion of privacy with respect to dissemination of information which already is a matter of public record. No reasonable expectation of privacy attaches to such information. Accordingly, we submit, it is wholly untenable to hold that a disclosure of such public information can in any way give rise to an action for damages. This is particularly true where, as here, the suit is brought by the very person who, in the course of the prior summons enforcement proceedings, caused the matter in question to become public knowledge.

*Cooper v. IRS, supra,* is particularly instructive in this respect. *Cooper* involved a request under the Freedom of Information Act, 5 U.S.C. (FOIA) Section 552, to the Internal Revenue Service for copies of all exhibits introduced into evidence in two cases tried in the United States Tax Court. After the Tax Court decision in each of the cases became final, the evidentiary exhibits were returned to the Internal Revenue Service to conserve the Tax Court's storage space, as permitted by Section 7461 of the Code (26 U.S. C.). Hence, the exhibits were no longer available for public inspection in the files of the United States Tax Court.

The Internal Revenue Service opposed the production of the returns and other return information and exhibits on the ground that such documents were protected from disclosure by Exemption 3 of the FOIA, 5 U.S.C., Section 552(b)(3). In this regard, the Internal Revenue Service claimed that the exhibits consisted of "returns" and "return information" that were protected from disclosure by Section 6103 of the Code. The court in *Cooper* ruled that despite the fact that the exhibits consisted of "returns" and "return information" that would normally be protected by Section 6103, such documents lost their confidentiality as a result of the prior disclosure in a judicial proceeding. Specifically the court stated that, because the returns "were released to the Tax Court and were open to public inspection before being returned to the IRS, it is the opinion of this court that these documents, once having been disclosed in this way, cannot regain their confidential nature." (450 F.Supp. at 753.)

This rationale applies with equal force to the instant case. Taxpayer here brought out in an open court proceeding the fact that it was under investigation by the Internal Revenue Service as a result of information received regarding taxpayer's dealing in stolen oil. Once this information was made known in the court proceeding it lost its confidentiality and was no longer subject to the protections of Section 6103 of the Code. Since, under *Cooper,* this information may properly be the subject of a FOIA request, it can scarcely be said that the disclosure of this information can form the basis for an award of damages. [Footnotes omitted].

■ We hold that Hyatt's contention must fail. In so holding, we need not reach the loss of confidentiality contention advanced by Hyatt in reliance on *Cooper, supra.* Rather, we hold that Hyatt's disclosures were violative of the provisions of § 6103(k)(6) which reads:

*Disclosures by internal revenue officers and employees for investigative purposes.* —An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, *disclose return information to the extent that such disclosure is necessary in obtaining information,* which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made *only* in such situations and under such conditions as the Secretary may prescribe by regulation.

I.R.C. § 6103(k)(6) (West 1980) [emphasis supplied].

It is important to observe here that the disclosure of return information is permissible only "to the extent ... necessary *in obtaining information.*"

The record before us demonstrates that Hyatt did in fact mention, without pursuing *any* inquiries of the Amax officers to whom the remarks were directed, that there were allegations and rumors that Jim's Water Service, Inc. was involved in stealing oil. Both Mr. Lautenschlager and Mr. Brackett of Amax so testified. Agent Betty Lou Moses, who accompanied Hyatt, testified that the IRS was conducting an investigation of Jim's Water Service, Inc. She did not have a specific recollection of Mr. Hyatt's statement concerning the subject of Taxpayer stealing oil; however, she did not deny that Hyatt made the remarks. Mr. Hyatt, however, did not have any difficulty recalling what he stated. He testified on cross-examination that: he asked Mr. Lautenschlager of Amax whether Amax had reason to utilize water service in their operations; when informed that Amax does utilize water service, he (Hyatt) stated that "We have an investigation of Jim's Water Service. Have you incurred any financial problems with Jim's Water Service?"; when informed by Mr. Lautenschlager that Amax, on two occasions, had financial problems with Jim's Water Service, and that Mr. Rodgers gets accused of a lot of things his employees do because he employs a lot of ex-cons, remarked only that "we are aware of certain rumors and allegations"; Hyatt had no recollection of mentioning stolen oil. [R., Vol. X, pp. 190–209]. Mr. Lautenschlager and Mr. Brackett testified that Hyatt stated that there were rumors that Jim's Water Service was stealing oil. Both testified that no inquiries were made of them concerning their knowledge of such rumors. Mr. Lautenschlager testified that the meeting of April 5, 1979, was called to discuss matters dealing with Amax and its employees and that at the end of the 30 minute meeting Mr. Hyatt inquired about Jim's Water Service. It was then that Lautenschlager related the two business transactions Amax had with Jim's Water Service. Lautenschlager then testified:

Q Now, following that explanation by you, did Mr. Hyatt respond in any manner?

A He indicated that was not what he had in mind.

Q And what was your response to that?

A It was similar to what I had said to him at the start of the conversation. I told him I didn't understand what he was asking.

Q And then Mr. Brackett—Mr. Lautenschlager, what did Mr. Hyatt respond?

A He asked if I had any knowledge of rumors that Jim's Water Service, Inc. was stealing oil from the major oil companies, and I told him that I didn't know anything about that.

[R., Vol. XI, pp. 334–35].

Mr. Hyatt, upon direct examination, testified: He arranged the meeting of April 5, 1979, with Amax Coal Company officials to

discuss matters relating to employees of Amax; at the conclusion of the discussion about Amax's employees, he (Hyatt) inquired whether Amax had utilized Jim's Water Service in their operations; when informed by Mr. Lautenschlager that they had, Hyatt asked if they had incurred financial problems with Jim's Water Service; ultimately, after Mr. Lautenschlager had related two problems Amax had with Jim's Water Service and had volunteered that "Jim gets accused of a lot of things his employees do because he employs a lot of ex-cons," Hyatt remarked "Yes, we are aware of certain rumors and allegations", without identifying them; Lautenschlager then stated that if Hyatt and associates wanted to find out anything about Taxpayer they should go to a certain bar in Gillette where Jim's Water Service drivers "hang out"; Hyatt does not recollect mentioning the matter of Taxpayer's alleged theft of oil, but Hyatt did have information that Amax had purchased oil from Taxpayer and he (Hyatt) believed that when he referred to "rumors and allegations" that this might elicit or "identify the possible—additional sources of income to Jim's Water Service"; that after Mr. Lautenschlager explained that Taxpayer's employees had problems with their wives, he (Hyatt) concluded that Lautenschlager did not have any knowledge of the matter of theft of oil and for that reason he (Hyatt) did not ask specific questions about Amax's knowledge of such oil thefts. [R., Vol. XI, pp. 406–11].

The jury obviously credited the testimony of Lautenschlager and Brackett relative to the fact that Hyatt did relate to them that the IRS had heard "rumors and allegations" that Taxpayer was involved in theft of oil from major oil companies. The rule is well established that the jury alone is vested with the power and obligation to weigh conflicting evidence and to assess the credibility of the witnesses. *United States v. Sierra,* 452 F.2d 291 (10th Cir.1971); *Chavez v. United States,* 258 F.2d 816 (10th Cir.1958), *cert. denied,* 359 U.S. 916, 79 S.Ct. 593, 3 L.Ed.2d 578 (1959). Such is not the function of the appellate court. The court of appeals will not retry facts and findings

based on sharply conflicting evidence are conclusively binding on appeal. *United States v. 79.95 Acres of Land,* 459 F.2d 185 (10th Cir.1972).

In the course of closing argument to the jury, counsel for Taxpayer pertinently observed that if in fact Hyatt raised the matter of the "rumors and allegations" in order to elicit information concerning the alleged theft of oil, it was incumbent on Hyatt to have inquired of Lautenschlager and Brackett "Do you know where they get their oil?" [R., Vol. XII, p. 483].

The trial court properly instructed the jury. As concisely as possible, those· instructions outlined the factual context, fully explained the applicable statutes and pinpointed Hyatt's defense, *i.e.,* if, in fact, it be found that Hyatt made the disclosure attributed to him, to-wit, that Taxpayer was rumored or alleged to be involved in oil theft, that (a) such disclosure is permitted under a recognized exception in the law, or (b) if such disclosure was unlawful, it was neither wilful nor the result of gross negligence. After defining specific terms, the court then instructed:

> If you find that the disclosure of tax return information was made by the defendant in connection with his official duties, *and that such disclosure was necessary to obtain information not otherwise reasonably available,* then the disclosure would be authorized under the law, and you must find for the defendant.

> Good faith on the part of the defendant is a defense to an action for an unauthorized disclosure of tax return information. If you find that the defendant disclosed tax return information about the plaintiffs in an unauthorized manner, but that such disclosure was the result of a reasonable, good faith belief by the defendant that the law authorized him to make such statements, then you must find for the defendant.

> As has been noted, 26 United States Code, Section 7217 permits the award of punitive damages if the defendant, acting willfully or with gross negligence, made

an unauthorized disclosure of return information. The term "gross negligence" means either a willful act or an act performed in wanton or reckless disregard of the rights of another. If you find that there was a willful or grossly negligent unauthorized disclosure of return information by the defendant, you may award the plaintiffs, or either of them, punitive damages in addition to the $1,000.00 minimum statutory amount.

[R., Vol. VIII, pp. 9–10].

The jury returned a verdict against Hyatt holding him liable in damages to Taxpayer in amount of $1,000 for his violation of 26 U.S.C. § 7217. Judgment in that amount was entered on January 30, 1981. The court thereafter denied Hyatt's motion for judgment notwithstanding the verdict.

■ We must reject, just as did the trial court, Hyatt's contention that because the "tax information" disclosed at the April 5, 1979, meeting had been fully developed and disclosed in the course of the Wyoming district court proceeding on February 5, 1979, by virtue of cross-examination of Hyatt, that under *Cooper v. IRS, supra,* and other authorities relied upon by Hyatt, the content of the statement had become a matter of public record and, accordingly, could no longer be considered confidential "return information" within the meaning of § 6103. This case appears to be one of first impression within the context presented. The dearth of case law on the issue has, we believe, led the Government to focus its arguments on the lack of "confidentiality" in the "return information" once disclosed on the public court record, buttressed by congressional intent to disclose evidenced by enactment of the Freedom of Information act, 5 U.S.C. § 552. We find no legislative history evidencing congressional intent to negate or frustrate the purpose of § 6103, *supra,* in enactment of the Freedom of Information Act.

The issue in the case, however, (and as submitted to the jury) is not the loss of "confidentiality" or "privacy" but, rather, whether under the circumstances, Hyatt made an unauthorized disclosure of tax return information in violation of § 6103, *supra.* Even assuming the loss of confidentiality in the content of the statements, we hold that the April 5, 1979, disclosure was clearly unauthorized. First, the April 5, 1979, meeting arranged by Hyatt with the Amax officials was directed to an investigation of Amax, not Taxpayer. When Hyatt did make reference to the "rumors and allegations" that Taxpayer was involved in oil thefts, he *did not* make specific inquiries of Mr. Lautenschlager relative to his knowledge or information about such oil thefts. This is the more abusive in light of the fact that prior to the April 5 meeting, Mr. Hyatt had no reason to believe that Mr. Lautenschlager or Mr. Brackett had any knowledge or information about oil thefts allegedly committed by Taxpayer. Even after Mr. Lautenschlager related the two problems Amax had encountered with Taxpayer, one of which involved pouring water on a roadway instead of oil, Hyatt did not pursue inquiry of Lautenschlager or Brackett at that point relative to the rumors that Taxpayer had been involved in oil thefts. Under these circumstances, we must hold that Hyatt's disclosure of the "return information" was indeed unauthorized. The fact that Mr. Hyatt had given prior "in court" testimony relative to the alleged "rumors and allegations" which likely removed them from their otherwise "confidential" cloak, did not justify Hyatt's violation of the requirement that he, as an officer of the United States, is prohibited from disclosing "return information" absent express statutory authorization. Hyatt has not established such authorization.

WE AFFIRM.