William E. ROWLEY and Ellen L. Rowley, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–2132.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1995.

Decided Feb. 27, 1996.

---

Larry A. Smith, Ron S. Kirsch (argued and briefed), Sanford N. Lakin, Lakin, Worsham & Victor, Southfield, MI, for Plaintiffs-Appellants.

Gary R. Allen, Acting Chief (briefed), Jonathan S. Cohen (argued), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, Mary F. Clark, Brentwood, TN, for Defendant-Appellee.

Before: MARTIN and JONES, Circuit Judges; BELL, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

William E. and Ellen L. Rowley appeal the district court's grant of summary judgment in favor of the United States in this tax case. Specifically, the Rowleys claim the United States is liable for civil damages for the wrongful disclosure of certain tax return information while advertising a public auction of property seized from the Rowleys to pay a tax obligation. The United States argues in part that summary judgment was proper because the only information disclosed by the government was already part of the public record due to the previous filing and recording of federal tax liens, which abrogated the Internal Revenue Code confidentiality requirements and precluded wrongful disclosure liability. It is a question of first impression in this circuit whether, after a federal tax lien is filed and recorded and a taxpayer's return information becomes a matter of public record, republication of that material is exempt from the Internal Revenue Code's confidentiality requirements.

### I.

In 1982, the Rowleys filed a tax return with the Internal Revenue Service claiming certain partnership loss deductions. The deductions subsequently were disallowed by the Internal Revenue Service, and a dispute ensued as to the amount of tax owed. On October 13, 1989, the Rowleys petitioned the United States Tax Court for a determination of the amount owed, and a consent decision was entered on December 14, 1990, settling the taxes owing for 1982. After the Rowleys failed to pay the settled amount, the Internal Revenue Service demanded payment from them on four separate occasions.[1] Finally, on January 7, 1991, the Internal Revenue Service sent the Rowleys a final notice and

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. The Internal Revenue service issued notices and demands for payment of the assessed tax to the Rowleys on January 1, 1990; February 19, 1990; July 30, 1990; and December 30, 1990.

demand for payment, as well as a notice of intent to levy. The Rowleys later claimed they never received proper notice of the government's intent to levy, and that later disclosures made by the Internal Revenue Service during the course of an attempted sale of their property were unauthorized.[2] The government maintained, however, that the notice given to the Rowleys satisfied the requirements of the Internal Revenue Code.

In March 1991, notice of a federal tax lien was filed with the Williams County, Ohio Recorder's office. The notice included and made public the Rowleys' names and address, the kind of tax they owed, the date of assessment, and the unpaid balance. When the balance remained unpaid, Revenue Officer Emily Ebaugh of the Defiance, Ohio duty post was assigned to collect the amount owed. Ebaugh met with the Rowleys on December 23, 1991, and informed them that the Internal Revenue Service was considering seizing and selling the one-half interest they had in a cabin in Oscoda County, Michigan. In January 1992, Revenue Officer Ernie Kozlowski of the Alpena, Michigan duty post was assigned to assist Ebaugh. Kozlowski filed a notice of federal tax lien with the Oscoda County Register of Deeds on February 7. That notice contained the same information disclosed in the first lien notice.

On March 6, Kozlowski seized the Rowleys' interest in the Oscoda cabin and sent a notice of seizure, a notice of levy, and a notice of administrative appeal rights to Ebaugh for service on the Rowleys. Ebaugh personally served the Rowleys on March 17, and on March 27, William Rowley instituted an administrative appeal of the seizure on the ground that the Rowleys did not receive proper notice of the government's intent to

levy. While the Rowleys' administrative appeal was pending, Kozlowski placed an ad in the April 5 editions of the *Detroit Free Press* and *Detroit News* in an effort to sell the Oscoda cabin.[3] Another ad ran in the *Oscoda County Herald* on April 7, disclosing the Rowleys' names, the legal description of their property, and the reason for the seizure. As a result of the ads, interested purchasers inquired about the property, and the Internal Revenue Service provided information packets containing the same information included in the *Oscoda County Herald.*

On April 8, after reviewing the Rowleys' administrative appeal, the Internal Revenue Service released its seizure of the Oscoda cabin on the ground that the Rowleys did not receive proper notice of the intended levy. The Rowleys were notified in an April 17 letter that the property had been released and would not be sold.[4]

On October 12, 1993, the Rowleys brought this action for civil damages against the United States, alleging that the Internal Revenue Service's disclosure of their tax return information during the course of the attempted sale of their property was wrongful because they had not received adequate notice of the government's intent to levy. The United States in turn moved for summary judgment on the following grounds: (1) the Internal Revenue Service's collection activity was proper and satisfied all relevant notice provisions; (2) notwithstanding possible defects in complying with the notice requirements, disclosures made in connection with authorized collection activities do not give rise to liability; (3) because the information the Rowleys complained of was already a matter of public record, the government could not be liable

---

**2.** 26 U.S.C. § 6331(d) states that before property is seized, the Internal Revenue Service must notify a taxpayer at least thirty days before the date of levy. Notice may be given in person, left at the taxpayer's dwelling or place of business, or sent to the taxpayer's last known address by registered or certified mail. In this case, the Internal Revenue Service eventually decided to release property seized from the Rowleys because a revenue officer did not comply with I.R.M. § 56(12) 1.1(2), an Internal Revenue Manual provision stating that a taxpayer must be given notice of an intent to levy within 180 days prior to the seizure of property.

**3.** These two ads did not contain any taxpayer information, and are not at issue.

**4.** In its letter to the Rowleys, the Internal Revenue Service wrote: "In response to your March 27, 1992, seizure appeal letter, Revenue Officer Ernie Kozlowski has advised us he is releasing the seizure of your property. After a careful review of the facts you presented us, we found that you did not receive proper notice on [sic] your liability with us."

for its disclosure; and (4) even if the disclosures were not authorized, they were made in good faith and liability was thereby precluded.

The district court granted the United States' motion for summary judgment on August 11, 1994 on the ground that the Internal Revenue Service merely republished information that was already in the public domain, and the disclosure was therefore unprotected by Internal Revenue Code confidentiality provisions.[5] The district court dismissed the Rowleys' unauthorized disclosure claim and this timely appeal followed.

## II.

■ We review a district court's grant of summary judgment *de novo,* applying the same test that was used by the district court in its initial review of a motion for summary judgment. *Sims v. Memphis Processors, Inc.,* 926 F.2d 524, 526 (6th Cir.1991). Summary judgment is appropriate if the record discloses "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The issue of whether the Internal Revenue Code confidentiality requirements are abrogated and wrongful disclosure liability is precluded for subsequent disclosures of tax return information when a public record has been created by the filing and recording of a judicial lien is a legal one which we review *de novo. United States v. Graves,* 60 F.3d 1183, 1185 (6th Cir.1995). This question is also one of first impression in this circuit and one that has divided other circuits.

Under 26 U.S.C. § 6103(a), "federal tax returns and tax return information are, with certain exceptions, confidential." *Davidson v. Brady,* 732 F.2d 552 (6th Cir.1984). Federal employees may not disclose such information unless an exception is met, and a

taxpayer has a "statutory cause of action for damages against any person who knowingly or negligently discloses any return or return information in violation of the Act." *Id; See* 26 U.S.C. § 7431(a).[6] By statute and regulation, the Internal Revenue Service is permitted to disclose tax return information to the extent necessary to locate assets in which a taxpayer has an interest, to effect a lien or levy, or to seize or sell assets to collect taxes due. *See* 26 U.S.C. §§ 6321 and 6331; Treas. Reg. § 301.6103(k)(6)–1(b)(6) (permitting disclosure of tax return information necessary to establish liens against a taxpayer's assets, or to levy on, seize, or sell assets to satisfy any outstanding liability).

In response to the Rowleys' claims on appeal, the United States argues that the republication of tax return information that has been made a matter of public record in accordance with the provisions of the Internal Revenue Code authorizing the filing of a federal tax lien notice is not subject to Section 6103's confidentiality provisions. The United States urges this court to hold, as the Ninth Circuit has, that once tax return information is part of the public domain, there can be no Section 6103 violation for any subsequent disclosure. The Rowleys, by contrast, argue that this court should limit its review to the propriety of the disclosure at issue, rather than ask whether the confidentiality of tax return information has been lost already. The Rowleys argue that this court should join the Fourth and Tenth Circuits in holding that prior disclosures of tax return information that are a matter of public record do not automatically insulate the United States from liability for later unauthorized disclosures of such information.

The Ninth Circuit has stated its position in *Lampert v. United States,* 854 F.2d 335 (9th Cir.1988), *cert. denied,* 490 U.S. 1034, 109

---

**5.** The district court rejected the United States' first two theories in support of their motion for summary judgment because those arguments involved factual questions about whether the Rowleys had been given proper notice of the government's intent to levy. The court did not reach the United States' fourth argument because it determined summary judgment was appropriate based on its third theory.

**6.** 26 U.S.C. § 7431(a)(1) states that "[i]f any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States."

S.Ct. 1931, 104 L.Ed.2d 403 (1989) and *Schrambling Accountancy Corp. v. United States,* 937 F.2d 1485 (9th Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992). In *Lampert,* the court considered whether "press releases by government officials, relating to public judicial proceedings, constitute[d] unauthorized disclosures of 'tax return information' in violation of 26 U.S.C. § 6103." *Lampert,* 854 F.2d at 336. At issue was 26 U.S.C. § 6103(h)(4)(A), a provision authorizing the disclosure of tax return information in judicial proceedings involving a taxpayer's civil or criminal tax liability. The government argued that when such information is disclosed lawfully during judicial proceedings, it loses its confidentiality, and a subsequent press release based solely on information contained in the public court record does not constitute an unauthorized disclosure. The taxpayers argued, however, that while such information could be disclosed in court, "further dissemination of even 'public record' return information" was prohibited. *Id.* at 337. The court disagreed with the taxpayers, and stated:

> We believe that Congress sought to prohibit only the disclosure of confidential tax return information. Once tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information. We agree when once information is lawfully disclosed in court proceedings, "[Section] 6103(a)'s directive to keep return information confidential is moot." Therefore, we hold that once return information is lawfully disclosed in a judicial forum, its subsequent disclosure by press release does not violate the Act.

*Id.* at 338 (citations omitted).

Three years later, in *Schrambling,* the Ninth Circuit held that tax return information included in recorded notices of federal tax liens and in a bankruptcy petition were no longer confidential and could be disclosed again without regard to Section 6103. *Schrambling,* 937 F.2d at 1489–90. In so holding, the court stated: "[t]he relevant inquiry should focus on whether the prior authorized disclosure, here the recording of a tax lien, destroys the confidential nature of the information. We are concerned with the *effect* of recording the lien, not its 'informality.'" *Id.* at 1488–89 (emphasis in original). The court noted that documents filed in the county recorder's office are public records open for public inspection. Moreover, the court distinguished information in court documents from that in recorded liens, stating that "the purpose of recording the lien, unlike including th. information in court documents, is to place the public on notice of the lien ... [r]ecording the information in the County Recorder's office thus exposes the information to as much, if not greater, publicity than publication in a judicial proceeding." *Id.* at 1489.

*Lampert* and *Schrambling* are in contrast with *Rodgers v. Hyatt,* 697 F.2d 899 (10th Cir.1983) and *Mallas v. United States,* 993 F.2d 1111 (4th Cir.1993), cases cited by the Rowleys in support of their position that the United States is liable in this case for unauthorized disclosures of their tax return information. In *Rodgers,* an Internal Revenue Service agent was subpoenaed to testify at a district court proceeding to enforce an Internal Revenue Service summons. At a later meeting, the agent made references to the allegations that had been the subject of his testimony in the district court proceeding. When the taxpayer sued the agent for violating the confidentiality provisions of Section 6103 by disclosing his tax return information, the agent asserted that the disclosures during the meeting were proper pursuant to an ongoing investigation of the taxpayer. Following a jury verdict in the taxpayer's favor, the agent appealed, arguing that the district court should have granted him judgment as a matter of law on the ground that the "prior 'in court' disclosure of the return information removed the statements ... from the confidentiality requirements" of Section 6103. *Rodgers,* 697 F.2d at 901.

The Tenth Circuit declined to hold that, because the tax information "had been fully developed and disclosed in the course of the ... district court proceeding ... the content of the statement had become a matter of public record and, accordingly, could no longer be considered confidential 'return informa-

tion' within the meaning of [Section] 6103." *Id.* at 906. The court held that the issue was "not the loss of 'confidentiality' or 'privacy' but, rather, whether under the circumstances, [the agent] made an unauthorized disclosure of tax return information in violation of [Section] 6103." *Id.* Because the court found that the agent's disclosure of the information was unauthorized under the circumstances, it held that "[t]he fact that [he] had given prior 'in court' testimony relative to the alleged 'rumors and allegations' which likely removed them from their otherwise 'confidential' cloak, did not justify [his] violation of the requirement that he, as an officer of the United States, is prohibited from disclosing 'return information' absent express statutory authorization." *Id.*

In *Mallas,* the Fourth Circuit likewise held that the United States can be liable for an unauthorized disclosure of tax return information even where that information was previously made part of the public domain. In *Mallas,* the Internal Revenue Service continued to disseminate reports to tax shelter investors notifying them of the plaintiffs' criminal convictions after the court unanimously reversed those convictions. The plaintiffs filed suit, seeking damages for the unauthorized disclosure of tax return information in violation of Section 6103. The United States defended in part on the ground that "republication of the information was not a 'disclosure' because the information was not confidential." *Mallas,* 993 F.2d at 1118. The United States claimed that the information included in the letters was not confidential in that it simply republished the fact of the plaintiffs' convictions, a matter of public record. The court disagreed and held in favor of the plaintiffs, stating that "Congress strictly circumscribed the contexts in which Government officers or employees may disclose such information. Unless the disclosure is authorized by a specific statutory exception, section 6103(a) prohibits it." *Id.* at 1120. The court further stated that it was aware of no exception "permitting the disclosure of 'return information' simply because it is otherwise available to the public." *Id.*

■ A careful review of these cases leads us to disagree with the Rowleys that the Tenth and Fourth Circuits have taken the better approach in holding that prior disclosures of tax return information in the public domain do not insulate the United States from liability for subsequent disclosures of a taxpayer's return information. Instead, we believe the Ninth Circuit's argument in *Schrambling* is the most persuasive in light of the circumstances of this case. Here, as in *Schrambling,* the information disclosed by the Internal Revenue Service was previously disclosed in tax liens filed with County Registers of Deeds. This case is distinguishable from *Rodgers* and *Mallas,* cited by the Rowleys, where the tax information was disclosed publicly within the context of an earlier judicial proceeding. As both *Schrambling* and the district court noted, the type of previous disclosure involved here (i.e. the recording of a federal tax lien in a County Register of Deeds' office) is designed to provide public notice and is thus qualitatively different from disclosures made in judicial proceedings, which are only incidentally made public.

We further distinguish the Rowleys' situation from that of the plaintiffs in *Mallas.* In that case, the circulated letters "did more than simply repeat the public fact of [the] convictions . . . . they described with specificity the 'financing scheme' that underlay those convictions." *Mallas,* 993 F.2d at 1121. Here, the item in the *Oscoda County Herald,* the information in the public notices, and the packages sent to interested purchasers did no more than re-state the Rowleys' names and address, the legal description of their property, and the reason for the seizure. The material disclosed by the Internal Revenue Service was precisely the same information that was recorded in the Register of Deeds' offices, and was clearly already a part of the public domain.

We therefore follow the Ninth Circuit in holding that, once a taxpayer's return information becomes part of the public domain through the filing and recording of a judicial lien, it loses its confidentiality and is not protected by Section 6103 if republished by the Internal Revenue Service for tax administration purposes. Furthermore, we disagree with the Rowleys that our ruling will defeat the purpose of the wrongful disclosure

statute or render it meaningless. As the D.C. Circuit has stated, "[a]bsolute confidentiality ... is neither attainable nor desirable. Competing concerns ... impel some compromise of the taxpayer's privacy." *National Treasury Employees Union v. Federal Labor Relations Auth.,* 791 F.2d 183, 184 (D.C.Cir.1986). We believe the approach we adopt today strikes the proper balance between a taxpayer's reasonable expectation of privacy and the government's legitimate interest in disclosing tax return information to the extent necessary for tax administration functions.

The United States was entitled to summary judgment on the theory that Section 6103(a)'s general rule of confidentiality has no application to situations where tax return information is placed in the public domain by the filing of tax lien notices, and is subsequently republished by the Internal Revenue Service for the purpose of carrying out its administrative functions. Because we hold that summary judgment was proper for this reason, we need not determine whether procedural defects in the implementation of levies give rise to Section 7431 liability, or whether the United States would have been immunized from damages in this case in accordance with the good faith exception of 26 U.S.C. § 7431(b). **AFFIRMED.**