107 F.3d 870
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 David R. BOBACK, Jr., Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION and Local 1112, UAW, Defendants-Appellees.
 
 No. 95-3836.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1997.
 Before: KEITH, BOGGS, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff David Boback appeals the district court's grant of summary judgment in favor of Defendants General Motors Corporation and United Auto Workers Local 1112 in this suit alleging that the Defendants discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213; Title VII of the Civil Rights Act, 42 U.S.C. § 2000; and the Rehabilitation Act, 29 U.S.C. §§ 791, 793, 794. On appeal, Boback asserts that a genuine issue of material fact exists as to whether the Defendants complied with the reasonable accommodation standard provided under the Americans with Disabilities Act. Because this case was properly decided as a matter of law, we affirm the judgment of the district court.
 
 I.
 
 2
 David Boback began his employment with General Motors Corporation ("GM") on May 16, 1978, and became a member of United Auto Workers Local 1112 ("Local 1112"). Boback worked in a number of positions on the production line at GM's Lordstown plant until undergoing elbow surgery in July 1991, apparently due to a work-related injury from the previous year. Following this surgery, Boback's physician, Dr. Robert J. Cuttica, opined that he should not do work requiring repetitive hammering, pushing or pulling.[1] Boback came back to work in December 1991 and was assigned to the transitional work center, where workers returning from medical leave perform light work while GM determines what permanent positions will accommodate their physical restrictions. In January 1992, GM offered Boback his former position on the "dip rail" in the hard trim department. Claiming that his physical limitations precluded this type of work, Boback returned to leave status on January 13, 1992. Boback went back to work on February 5, 1992, installing harnesses in the hard trim department. He worked in this position for approximately two weeks before allegedly injuring his back and returning to leave status on February 17, 1992.
 
 
 3
 From April 1992 through November 1993, Boback was offered seven different positions by GM in an attempt to accommodate his physical restrictions. Several of these positions were offered on the advice of GM's plant physician, Dr. Brian Gordon. Boback refused to accept any of the assignments on a permanent basis, maintaining that his physical restrictions prevented him from performing them. In November 1993, he was placed on extended disability leave.
 
 
 4
 Boback filed this action against GM and Local 1112 on December 30, 1993, alleging that they violated the Americans With Disabilities Act ("ADA"), the Rehabilitation Act and Title VII of the Civil Rights Act of 1964 by failing to reasonably accommodate his disability. The Defendants independently moved for summary judgment, arguing that Boback had not presented sufficient evidence to support any of his three claims. In response, Boback addressed only his claim under the ADA. The district court granted the Defendants' motions for summary judgment as to all three of Boback's claims on July 6, 1995, holding that the jobs which Boback stated he could perform were not available to him due to his physical limitations and his lack of seniority under the collective bargaining agreement ("CBA") negotiated between GM and Local 1112. Boback appeals, arguing that the court improperly granted summary judgment on his ADA claim.
 
 II.
 
 5
 This court reviews a district court's grant of summary judgment de novo. Rowley v. United States, 76 F.3d 796, 799 (6th Cir.1996). We must affirm the district court's grant of summary judgment if the pleadings, affidavits and other submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995); Fed.R.Civ.P. 56(c). In determining whether summary judgment was appropriate, we view the facts and any reasonable inferences drawn from those facts in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). However, in order to defeat a properly supported motion for summary judgment, a respondent must demonstrate that there is more than just some metaphysical doubt as to the material facts. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479, 1480 (6th Cir.1989).
 
 III.
 
 6
 Under the ADA, it is unlawful to discriminate against a qualified individual in the terms and conditions of employment based on that individual's disability. 42 U.S.C. § 12112(a) (1995). A determination of whether an individual is qualified is made according to (1) whether the individual meets the necessary prerequisites for the job, such as education, training, experience; and (2) whether the individual can perform the essential job functions with or without reasonable accommodation. See 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). A reasonable accommodation includes "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position...." 42 U.S.C. § 12111(9)(B). An employer is not required to make such an accommodation if it can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A).
 
 
 7
 In Monette v. Electronic Data Sys. Corp., 90 F.3d 1173 (6th Cir.1996), we set forth the framework for analyzing claims of discrimination under the ADA. In order to recover, a plaintiff must show that (1) he suffers from a disability; (2) he is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) he was discriminated against by reason of his disability. Id. at 1178. Courts must distinguish between (1) cases where the plaintiff has direct evidence of the employer's discrimination or the employer concedes it relied on the employee's disability in making the challenged employment decision, and (2) cases where the plaintiff has only indirect evidence of discrimination. Id. at 1185. Where, as in the present case, an employer concedes it relied on an employee's disability in making the challenged employment decision, the traditional burdens of proof apply.[2] Id. at 1184. The disabled individual always bears the burden of proving that he or she is otherwise qualified for the position in question, absent the challenged job function or with the proposed accommodation. Id.
 
 IV.
 
 8
 Boback argues that the Defendants violated the ADA by failing to place him in a job that would accommodate his physical restrictions. Boback asserts, and the Defendants do not dispute, that Boback's physical restrictions constitute a "disability" within the coverage of the ADA. See 42 U.S.C. § 12102(2). Boback contends that he was a qualified individual with a disability protected by the ADA because he was capable of performing the essential functions of various jobs available within GM if only GM had reassigned him to a position consistent with his physical limitations. Because Boback has presented no evidence that he was capable of performing the essential functions of his suggested alternative positions, and due to the fact that he lacked the requisite seniority for several of those positions, the district court did not err in granting summary judgment in favor of the Defendants.
 
 
 9
 Boback contends that GM could have placed him in other positions that he would have been physically capable of performing. Specifically, Boback asserts that he should have been assigned to the following jobs: (1) main line coordinator; (2) driver; (3) roll test; (4) paint inspection; (5) final line inspection; (6) cleanup; (7) paint repair; and (8) metal finish. Defendants contend, however, that based on his physical restrictions, Boback was not a "qualified individual" with respect to the driver, roll test and metal finish jobs because he was unable to perform their essential functions either with or without reasonable accommodation. According to Defendants, both the driver and roll test positions would require Boback to open and close approximately 270 car doors per shift and to bend over and stoop down into the car and exit from the car. The metal finish job would require Boback to use a sander and a buffer on the metal parts of each car coming down the line. The record indicates that the essential functions of these positions necessarily involve pushing, pulling and bending; and Boback has not suggested any job modifications that would alleviate the physical demands of this work. GM's motion for summary judgment was supported by the affidavit of GM's physician, Dr. Gordon, which stated that Boback's physical limitations would disqualify him for such positions involving pushing, pulling and bending.
 
 
 10
 In response, Boback offers only his personal observation that he could perform such work. In a similar case, the Tenth Circuit held that a plaintiff's uncorroborated belief in his physical prowess is not enough to counter affirmative evidence to the contrary. White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir.1995). In White, the plaintiff filed suit under the ADA claiming that his employer failed to reasonably accommodate his disability so that he could perform the essential functions of various jobs within his employer's company. Id. However, the plaintiff offered no evidence that he was capable of performing the jobs in question and never suggested what type of accommodations would have been necessary to allow him to so perform. Id. Holding that the plaintiff had presented insufficient evidence to establish that he was a "qualified individual" protected by the ADA, the court stated:
 
 
 11
 As to possible accommodations which would have enabled him to perform the essential lifting and standing functions of the Machine Operator II and Unit Assembler positions, White offered no evidence. Instead, he simply continued to assert the bald conclusion that with "reasonable accommodation" he could have performed the "essential functions" of the jobs at issue.
 
 
 12
 White, 45 F.3d at 362, 363. The court concluded by stating: "While we must resolve doubts in favor of White, conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." Id. at 363 (citing Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 530 (10th Cir.1994)).
 
 
 13
 Like the plaintiff in White, Boback simply offers no affirmative evidence that he could perform the first three jobs at issue, nor does he propose job modifications that would allow someone with his disability to perform the work in question. Accordingly, because Boback has failed to establish that he was a "qualified individual with a disability" with respect to these three positions, the district court properly granted summary judgment in favor of the Defendants.
 
 
 14
 Defendants next argue that the five remaining positions identified by Boback--(1) main line coordinator;[3] (2) paint inspection; (3) final line inspection; (4) cleanup; and (5) paint repair--are not "vacant" within the meaning of the ADA due to Boback's seniority status and, thus, would not constitute reasonable accommodations of his disability. See 42 U.S.C. § 12111(9)(B) (stating that the term "reasonable accommodation" may include "reassignment to a vacant position...."). Specifically, the Defendants note that the collective bargaining agreement negotiated between GM and Local 1112 reserves these positions for persons with greater seniority than Boback. The CBA provides that employees with physical limitations who are reassigned to new positions can only displace employees with less seniority.[4] Nevertheless, Boback maintains that the ADA requires the Defendants, as a reasonable accommodation of his disability, to violate the seniority provisions of the CBA and transfer him into one of the five remaining positions which he asserts he is physically capable of performing.[5]
 
 
 15
 However, because the ADA does not require an employer to violate the contractual rights of other workers in an effort to accommodate a single employee, the terms of the CBA control our determination of what accommodations of Boback's disability were reasonable in the present case. See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir.1995) (stating that the "ADA does not require that [the employer] take action inconsistent with the contractual rights of other workers under a collective bargaining agreement"); see also Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir.1995) (holding that an employer was not required to make accommodations that would violate the rights of other employees, and had no obligation to violate a collective bargaining agreement in order to accommodate an employee even if it perceived that employee to have a substantial impairment). In the present case, Boback did not possess the requisite seniority under the CBA to hold any of the five remaining positions he has identified. Because the Defendants could not transfer Boback into these positions without violating the contractual rights of other employees, the Defendants were not obligated under the ADA to offer him any of the positions as a reasonable accommodation of his disability. See Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir.1995) (in affirming summary judgment in an ADA case, the court noted that a collective bargaining agreement prohibited the plaintiffs' transfer to any other job because plaintiffs lacked the requisite seniority). Therefore, the district court properly granted summary judgment in favor of the Defendants as to the five remaining positions.
 
 V.
 
 16
 While we must resolve all doubts in favor of parties opposing summary judgment, Boback's conclusory allegations are insufficient to defeat the Defendants' adequately supported motions. White, 45 F.3d at 363. Because no genuine issue of material fact exists, the district court properly granted the Defendants' motions for summary judgment. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Dr. Cuttica subsequently recommended additional physical restrictions indicating that Boback should not perform any lifting over his head and should not lift more than twenty pounds. Evidence was also presented that Dr. V.G. Raghavan recommended Boback not perform any duties as a right side door molding installer which required standing, bending, kneeling and slouching
 
 
 [2]
 If there is only indirect evidence of discrimination, courts must utilize the "burden shifting" analysis set forth in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973)
 
 
 [3]
 There is some confusion over Boback's deposition testimony, which refers to the main line coordinator position as the job held by Wayne Yearlie. The Defendants' evidence indicates that Boback may have been referring to Wayne Ulery who is benefits coordinator or to Frank Barton who holds the position of main line coordinator. Both Ulery and Barton have more seniority than Boback
 
 
 [4]
 Boback contends that the National Agreement between GM and the UAW indicates that GM and Local 1112 were contractually free to reassign disabled employees to new positions without regard to seniority. However, the language of the National Agreement permits, but does not require, local unions and management to waive seniority provisions in a local agreement. The agreement at issue between GM and Local 1112 provided for no such waiver of seniority
 
 
 [5]
 Boback contends that the Defendants are not bound by the seniority provisions of the CBA in accommodating his disability and have, in fact, waived those provisions for other disabled employees. For example, Boback asserts that the Defendants ignored seniority when they placed a disabled employee named Sandy Natali in a new position. The evidence presented by GM, however, clearly indicates that Natali did have the necessary seniority for the position which she assumed